LORENC WOJTYNA *vs.* BAZAR BROTHERS & CO.

MARCH 2, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Elevators.   Guard Rails.   Due Care.   Negligence.*

The effect of Gen. Laws, 1923, cap. 171, sec. 16, providing that it shall be no defence to an action for injury that the one injured had knowledge that any elevator was being operated contrary to the provisions relating to guard-rails, is to restrict the law of contributory negligence, and in such case the test of the plaintiff's duty is ordinary care; and plaintiff is in the same legal position as any other employee who did not know the elevator was unguarded, but the plaintiff must still prove that he was in the exercise of due care, for the statute does not make the owner or lessee an insurer.

TRESPASS ON THE CASE.    Heard on exceptions of plaintiff and exception to direction of verdict for defendant sustained.

STEARNS, J.   The action is trespass on the case for negligence to recover damages for personal injuries to plaintiff, caused by falling into an unguarded elevator well.

Plaintiff was employed by defendants as a bottle washer. On the day of the accident plaintiff began work in the morning in the second story of the shop where he was accustomed to work.   As the day was the Jewish sabbath, neither defendants nor any of the other employees worked on that day.   In the shop was an open elevator used for carrying freight between the first and second floors, which fitted into an open space in each floor and when at rest on either floor, formed a part thereof; when raised above the

first floor, a large opening into the cellar was left. The elevator was supported by and ran upon a heavy beam on each of two opposite sides; it was operated by releasing a brake and by pulling on a rope attached to balanced weights. When the elevator was empty, releasing the brake would cause it to rise; when not in use, to insure the keeping of the elevator in place on the first floor, it was customary to put heavy boxes thereon. The elevator opening on the second floor was guarded by rails. Plaintiff claims the first floor opening was unguarded; defendants testified that the openings on both floors were guarded by railings.

On the day of the accident plaintiff finished his work about 8 o'clock at night. The elevator was not used that day. Plaintiff testified that several times in looking from the room where he was working he saw the elevator in place and level with the first floor; he turned off the electric light in his workroom, the building was then dark and unlighted; to get out of the building he had to walk down stairs to the first floor, thence along past the elevator, through into the office and out into the street. The passageway by the elevator was about two feet in width, barrels and boxes being piled on the floor opposite the elevator. Over this passageway near the elevator was an electric light bulb suspended by a wire from the ceiling.

In attempting to find this bulb and turn on the light, plaintiff who was walking in the dark, fell into the open elevator well and was injured. The elevator at that time was somewhere between the first and second floors. Just how it got out of position on the level of the first floor does not clearly appear. It is possible, as is suggested in the evidence, that the brake may have been loosened and that the elevator began creeping upwards. Plaintiff's daughter brought dinner to plaintiff in the shop at noon. She testified that she had previously seen the elevator between the first and second floors at times when it was not being used; that there was no guard around the elevator; that on the day of the accident when she went in to the building, and

when she went out twenty minutes later, the elevator was half way between the two floors. Plaintiff had been accustomed to bring a lantern from his home to lighten his path when leaving the building at night. On this occasion he had not brought it to the shop because there was no kerosene in the lantern.

The trial justice directed a verdict for the defendants and refused to direct a verdict for plaintiff. The case is here on plaintiff's exceptions to these rulings. The refusal to direct a verdict for plaintiff was proper, as the evidence was conflicting in regard to the absence of guard railings around the elevator. The exception to this ruling is overruled. The direction of a verdict for defendants was erroneous.

There was evidence of the negligence of defendants, that is of a failure to observe their legal duty. The statute (C. 171, s. 16, Gen. Laws 1923) provides that all elevator openings through floors where there is no shaft, shall be protected by sufficient railings, gates, trap-doors, or other mechanical devices equivalent thereto, and the same shall be kept closed in the nighttime or when not in use; in all cases where personal injury or death ensues in consequence of the failure to comply with the statute, damages for the injury may be recovered from the owner and lessee of the building and "It shall be no defence to said action that the person injured, or whose death ensues as aforesaid, had knowledge that any elevator was being operated in said building contrary to the provisions of this and the preceding section, or that such person continued to ride in said elevator with said knowledge."

It thus appears in plaintiff's case that he was familiar with the premises and knew there were no guard rails on the first floor and that the elevator was likely "to creep". Plaintiff testified that at the time of the accident he did not know that he was near the elevator, and in fact did not think of the elevator at all. In the absence of the statutory provision, plaintiff would properly be held to have been

guilty of contributory negligence; his forgetfulness of the existence of a known danger would not excuse. The true foundation of liability for negligence is knowledge. A plaintiff will not be held to have been guilty of contributory negligence, if it appears that he had no knowledge, actual implied, of the danger, 20 R. C. L. p. 107 (93). The statute, however, expressly provides that in this particular class of actions, knowledge of the danger due to lack of the required safety appliances is no defence to an action. The effect of the statute is thus, to that extent, to restrict the law of contributory negligence. The test of the plaintiff's duty in this case is ordinary care as thus restricted. By the statute plaintiff is put in the same legal position as any other employee who did not know that the elevator was unguarded. This does not mean that the owner or lessee is made an insurer; nor that one can walk deliberately into an open and visible elevator well and thereafter recover damages for his injury. Such a result would violate the fundamental principle of torts, that he who consents can not receive an injury. Assuming that the elevator was unguarded, the injury suffered was one which was intended to be prevented by the statute; it was a natural and probable consequence of the violation of the statute which is thus the proximate cause. To more effectually secure compliance with the statutory obligation to guard elevator openings, the legislature in addition to the imposition of a penalty for its infraction has increased the liability for personal injuries suffered in consequence of the neglect of the statutory duty. The purpose of the act is humane; the obligation of the owner is reasonable and, as stated in *Weeks* v. *Fletcher*, 29 R. I. 112, the language of the act will bear no restricted construction.

Defendants to some extent rely upon *Leahy* v. *U. S. Cotton Co.*, 28 R. I. 252, in support of their claim that plaintiff was guilty of contributory negligence as a matter of law. In the *Leahy* case plaintiff's employer, the defendant, failed to equip the freight elevator in its mill with an automatic signalling device as required by the statute. Plaintiff,

having occasion to use the elevator, opened the doors of the elevator shaft and waited within the enclosure between the doors and the elevator well until a fellow employee brought the elevator to the floor on which plaintiff was waiting and removed therefrom a load of goods. While plaintiff was thus waiting, his overseer gave him a box of goods with instructions to take the box to a floor below. While he was receiving these instructions plaintiff's head was turned away from the elevator from which he was distant about a foot. During this interval the elevator was lowered a number of feet by some other person. Plaintiff, supposing that the elevator had not been moved, then turned back and without looking stepped into the elevator well, fell and was injured. The elevator well was lighted. It was held that to thus step, without looking, into a hole in a perfectly lighted place was in the circumstances contributory negligence as a matter of law. In the opinion, it is stated that it does not appear how a signal that the elevator was in motion would have assisted plaintiff if he did not look. It might perhaps be said that, as plaintiff's attention was diverted temporarily by his overseer, the sounding of a signal when the elevator began to move would have given notice to plaintiff that it was in motion and thereby have caused him to look again before attempting to step on to the elevator. The authority of the *Leahy* case is today questionable. In the *Weeks'* case, *supra,* and in *Baynes* v. *Billings,* 30 R. I. 53, the construction of the statute was less restricted, and we think more in accordance with the intent of the statute. In all of these cases it was held that the doctrine of assumed risk had been abolished by the statute. The plaintiff must still prove that he was in the exercise of due care. But, as already stated, the extent of the required care in this class of cases has been changed by the statute.

Plaintiff's exception to the direction of a verdict for the defendants is sustained. The case is remitted to the Superior Court for new trial.

*Voigt & O'Neill,* for plaintiff.

*George F. Troy, Robinson & Robinson,* for defendant.