LOUIS PIERCE *vs.* NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

THERESA PIERCE *vs.* NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

AUGUST 13, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. These are actions of trespass on the case for negligence for the recovery of damages by the plaintiff Theresa Pierce for her physical injuries and by the plaintiff Louis Pierce, her husband, for his consequential damages. The cases were tried together in the superior court before a justice thereof sitting with a jury which returned a ver-

dict for the wife in the sum of $15,000 and for the husband in the sum of $10,000.

The defendant did not file a motion for a new trial in either case, but has prosecuted bills of exceptions to this court and now relies upon only two exceptions in each case: (1) to the ruling of the trial justice overruling its objection to the admission of any testimony from the witness Omer L. Pierce, and (2) to the refusal of the trial justice to direct a verdict for the defendant.

On May 21, 1952 an employee of defendant came to the home of the plaintiffs to install a telephone. The telephone was to be located in the den but he went to the cellar to do part of the work. The cellar consisted of two separate rooms connected by a narrow passageway approximately three feet wide. While in the cellar the employee was observed by the three sons of the plaintiffs, particularly by Omer the oldest, who was then between six and seven years of age. According to the testimony of the boy Omer, the employee asked Mrs. Pierce for a stepladder. When she said she did not have one, he found a backless chair near the coal bin, took it to the middle of the passageway and stood on it while doing some work. Upon completing his work in the cellar the employee went upstairs, finished the installation, and after testing the telephone left between 12:30 and 1 p.m.

About five o'clock that afternoon when a storm threatened and the electric lights began to flicker, Mrs. Pierce took two hurricane lamps and went into the cellar to fill them with kerosene. She said she did not recall whether the light at the foot of the stairs was on, but after she had taken about four or five steps beyond the furnace she struck something and lost consciousness. Mr. Pierce heard a crash and a scream, went down into the cellar and found his wife lying in the passageway *beyond* the overturned chair.

We shall first consider the ruling allowing the child Omer to testify. At the trial Omer was just under ten years old.

When he was called as a witness the jury were sent out and the trial justice questioned him at considerable length. The child could spell his first and last names but could not spell his middle name "Lowell." He gave the date of his birth, where he lived and where he had lived before he moved to his present home five years ago. He told where he went to school, explained how he knew the nature of an oath, and said that he could remember things which had happened during the last five years. Counsel for defendant examined the child at some length, going over about the same ground covered by the trial justice. The trial justice then, over the objection of defendant, allowed the child to testify as to the facts of the case.

Counsel for both parties cite the same sections of 2 Wigmore on Evidence (3d ed.), chap. XXI, pp. 595-601, as to the proper tests in such cases. The questions put to the child were designed to give the tests laid down by Wigmore. Considerable latitude must be left to the trial justice on a matter like this, because so much depends upon the impression that the child makes by his behavior on the witness stand. 58 Am. Jur., Witnesses, §136, p. 102. The late cases in the supplement to the Wigmore text show that children from six to ten years of age are often allowed to testify.

The defendant admits the trial justice followed the right rule but attempts to support its exception by arguing that the testimony of the child that the workman, who was 5 feet 11 inches tall, stood on a chair which was about 18 inches high to work on a ceiling only 6 feet 7½ inches high was so palpably impossible as to prove that the child was not qualified to testify. In order to be in a position to make this argument, the defendant should have moved to strike all the child's testimony as soon as this particular testimony came out. Furthermore, the child said that the workman bent over somewhat and the position in which he held his tool, presumably a boring tool, to reach a place at an angle might well make the child's testimony at least possible. In

any event we are satisfied that the trial justice did not abuse his discretion and commit error in allowing the child to testify. The defendant's first exception is overruled.

We now turn to defendant's exception to the refusal of the trial justice to direct a verdict for defendant in each case. It treats this exception under five heads and first argues that there was a fatal variance between the declarations and the proof. The declarations allege that the passageway was dimly lighted and that it was negligence on the part of defendant to leave this chair in such a passageway so that a person walking through would be likely to fall over it; and that notwithstanding its duty defendant left the chair in that passageway and as a result of this negligence plaintiff Theresa, having no reason to know that the chair was there, while walking in that passageway tripped over it and suffered the injuries complained of. The defendant's main thrust on this point is that the evidence shows that the passageway was not dimly lighted and that leaving this chair in a dimly-lighted passageway was the nub of defendant's alleged negligence.

We do not agree with defendant that there was a fatal variance. "Dim" is a relative term. It means between light and dark. One of the primary meanings of "dim" according to Webster's New International Dictionary (2d ed.) 1946, is "darkish." When Mr. Pierce rushed down to the cellar after hearing the crash and his wife's scream, he noticed that the electric light at the foot of the stairs in the first cellar was on and he said the light in the passageway was "fair." *He was looking for his wife,* and that he could see her on the floor does not show that the passageway was not dimly lighted. The "dim religious light" of which Milton speaks may not disclose to a worshiper a kneeling bench in the aisle, but when that worshiper has fallen over the bench, the usher hearing a fall and an outcry and *looking for the injured person* may well have no difficulty in seeing the bench and its victim. It appears

that there was a hot-air furnace in the middle of the first cellar between the light and the passageway, that the walls of the passageway, called by Omer a "cave," were uneven, and we are of the opinion that reasonable men could conclude that this narrow passageway could well be called dimly lighted.

The following language in *Cimini* v. *Zambarano*, 36 R. I. 122, at page 130, would seem to indicate that the most defendant was entitled to was an appropriate instruction. "It is not every variance between the declaration and the evidence which will justify a verdict for the defendant. What amounts to a fatal variance is a question of law for the court. Whether there has been such a variance, in the case of conflicting evidence, is a question of fact for the jury to be determined by them after instruction by the court."

Under this point defendant next asserts that there was no evidence of negligence on the part of defendant. Here again defendant repeats for the second time its attack upon the improbability of the child Omer's testimony above referred to. The defendant fails to realize that the vital part of the boy's testimony is that the workman brought the chair into the passageway and not the way the workman used it. We are of the opinion that it cannot be seriously argued that reasonable men could not conclude that leaving this chair in the dimly-lighted passageway was not negligence.

The defendant points out that there was no direct evidence that the workman left the chair in the passageway. The fact remains that it was there at the time of the accident, some four hours after the workman left the cellar. We are of the opinion that it would be unreasonable for a jury to conclude that the chair had been taken away and brought back by someone else in that relatively short time, but they could reasonably conclude that the chair was where the workman left it.

The defendant's third contention is that plaintiffs failed

to prove that Mrs. Pierce was in the exercise of due care. In *Floyd* v. *Turgeon*, 68 R. I. 218, we stated, at page 224: "Contributory negligence is usually a question of fact and only rarely a question of law. Where the facts are such that a person of ordinary prudence would instantly perceive what to do or what to refrain from doing, it may become a question of law for the court."

In *Wojtyna* v. *Bazar Brothers & Co.*, 47 R. I. 221, this court at page 224 stated: "The true foundation of liability for negligence is knowledge. A plaintiff will not be held to have been guilty of contributory negligence, if it appears that he had no knowledge, actual implied, of the danger, 20 R.C.L. p. 107 (93)." See 38 Am. Jur., Negligence, §184, p. 860. The text of 20 R.C.L., §93, at page 107, has "or" between "actual" and "implied" so it is obvious that the omission of "or" between "actual" and "implied" in the above quotation was unintentional.

As a jury could reasonably find that the scene of the accident was dimly lighted they could find that Mrs. Pierce did not have actual knowledge of the chair. They could likewise find that she had no reason to believe that the workman would leave an obstruction in the passageway. 65 C.J.S., Negligence, §118 c., p. 715. Under these conditions it cannot be said as a matter of law that Mrs. Pierce had either actual or implied knowledge of the presence of the chair.

In *Kimatian* v. *New England Tel. & Tel. Co.*, 49 R. I. 146, this court at page 148 stated: "On the evidence unless something about plaintiff Mary's manner indicated that she was not truthful, she was not guilty of contributory negligence. The open trap door created an unobservable hole in a dark room dangerous to Mrs. Kimatian who was entitled to enter said room, who did not know even of the existence of the trap door and, if knowing thereof, had no reason to know that it was open."

We have just stated that the jury in the case at bar could

**334**

well find the lighting was dim and that the chair was unobservable. If in the cited case Mrs. Kimatian was free from negligence as a matter of law, Mrs. Pierce was certainly entitled to go to the jury on whether or not she was negligent.

The defendant's fourth contention is that, assuming the defendant was negligent and that Mrs. Pierce was free from negligence, the negligence of defendant was not the proximate cause of Mrs. Pierce's injuries. Bearing in mind the fact that Mr. Pierce found his wife *beyond* the overturned chair in the narrow passage, we are satisfied that a jury could reasonably conclude, as we believe most people would, that Mrs. Pierce fell over the chair.

The defendant finally contends that: "The plaintiffs have failed to sustain the burden of proving by a preponderance of the evidence the essential elements of an action of trespass on the case for negligence." It admits, however, that on a motion for a directed verdict it cannot make this argument which is directed to an exception to the failure to grant a new trial. What is said under this point is nothing more than a summary of the four points which we have already fully considered.

All of the defendant's exceptions in each case are overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

*John F. McBurney, Thomas E. F. Carroll,* for plaintiffs.

*Swan, Keeney & Smith, John B. Dillon,* for defendant.