In re GERALD.

No. 83–98–Appeal.

Supreme Court of Rhode Island.

Feb. 8, 1984.

Richard Tallo and Diane M. Pellegrino, Sols. for Town of Johnston, for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief Appellate Division, Providence, for respondent.

## OPINION

MURRAY, Justice.

This is an appeal from an adjudication of delinquency by a justice of the Family Court. Gerald, a sixteen-year-old youth, was adjudicated guilty of committing what would have been, had he been an adult, a second-degree sexual assault. The assault was perpetrated upon the five-year-old daughter of his foster parents. Gerald was committed to the Training School until further order of the court. On appeal, Gerald claims that the trial justice erred in ruling that the accusing witness, Heather, was competent to testify against him. We disagree.

At the time of the alleged assault, Gerald was a ward of the state living as a foster child with Heather's family in the town of Johnston. Heather's mother, Cora, testified that on the morning of November 3, 1982, she left Heather at home with Gerald and two of her other foster children, Lois and Susan, while she took her other daughter to the doctor. The foster children were instructed to stay home until after Heather had boarded the school bus for kindergarten, which she usually did at about 11:30 a.m. Lois testified that she and Susan went out early that morning, leaving Heather alone with Gerald.

Cora testified further that she was on the telephone, speaking to her husband, when Heather came home on the school bus at 2:30 p.m. Uncharacteristically, Heather came home that afternoon acting very upset. She slammed down her lunch box, threw off her coat, and went directly to her mother, telling her to hang up because she had something to tell her. Starting to cry, Heather said that she was mad at Walter (as Gerald was known in the household), that she didn't like what he did to her, and that he was kissing her as if she were a teenager, hard on her mouth and all over her hair. Heather then proceeded to tell her mother everything that had happened that morning.

The case came on for trial on November 30, 1982. Heather was examined at some length by both the court and the town solicitor before being found competent to testify. At the conclusion of the competency hearing the court stated, "I'm satisfied at this point that she is here to tell the truth; that she attends a church; that she has some knowledge of the issues of telling the truth and not lying; and that she would be competent to testify at this juncture."

Gerald argues that the trial justice's ruling was erroneous in that it is clear from the record that Heather did not know the meaning of telling the truth, that she did not necessarily think it bad to lie, and that she had no awareness of the consequences of lying in court. Although the record indicates that Heather was unable to answer abstract questions about what it means to tell the truth and what it means to tell a lie, there is ample evidence to support the ruling of the trial justice. Heather was able to answer factual questions intelligently. She testified that it was better to tell the truth than to lie, and she stated several times that she would not tell the judge a lie—that she would tell the truth.

Gerald maintains that Heather's clear ability to communicate and her promises to tell the truth are not enough. He contends that a witness of tender years must appreciate the obligation to tell the truth and must be able to articulate or demonstrate some knowledge of the adverse consequences of lying in court. Such an appreciation or knowledge, he claims, was not demonstrated by Heather.

In *State v. Cabral,* R.I., 410 A.2d 438, 442 (1980), we said that "a child may not testify unless and until the trial justice has been satisfied that the proposed witness can (1) observe, (2) recollect, (3) communicate (a capacity to understand questions and to furnish intelligent answers), and (4) appreciate the necessity of telling the truth." These four factors are set forth in 2 Wigmore, *Evidence,* § 506 at 712 (Chadbourn rev. 1979). We have also cited Wigmore with approval in *State v. Mandarelli,* 105 R.I. 696, 701, 254 A.2d 738, 741 (1969), and in *Pierce v. New England Telephone & Telegraph Co.,* 86 R.I. 326, 330, 134 A.2d 421, 423 (1957).

Professor Wigmore states, in the context of the capacity of a child to take the oath, that

"[a] child's inclination to tell the truth or the opposite is apt to be more a matter of instinct and of previous training and surroundings than of a conscious reflection upon the prospects of a future state. It has already been suggested * * * that, for any purpose whatever, *the preferable course is to accept a child's story for what it seems to be worth,* as ascertainable upon testifying, and not to impose any fixed limitations." (Emphasis added.) 6 Wigmore, *Evidence,* § 1821 at 405 (Chadbourn rev. 1976).

He also states that "the *trial court* must be the one to determine finally, upon all the circumstances, that the child has sufficient intelligence [to testify]." 2 Wigmore, *Evidence,* § 507 at 714.

Applying these principles to the present case, we are not of the opinion that

Heather's failure to utter the magic words (that she knew the difference between a lie and the truth) rendered her incompetent to testify in this case. As we said in *Pierce,* 86 R.I. at 330, 134 A.2d at 423, "Considerable latitude must be left to the trial justice on a matter like this, because so much depends upon the impression that the child makes by his behavior on the witness stand." Here, the trial justice was satisfied, after examining Heather and observing her behavior, that she was there to tell the truth and was otherwise competent to testify. Upon reviewing the record of the competency hearing, we find that the trial justice did not abuse the considerable latitude afforded her in such matters.

The trial justice's initial determination of competence is supported by the entire record of the trial proceedings. Heather's trial testimony demonstrates a clear ability on her part to observe, recollect, and communicate. Heather was able to tell the court precisely what Gerald did to her that morning. She told the court that Gerald put his hands down inside the sides of her farmer jeans; touched her inside her underpants; touched her inside her blouse; kissed her too hard on her face, cheeks, and head; laid her down on the family-room couch; and rolled back and forth on her stomach. She also testified that while he was rolling on her, he seemed to have a little pillow in front of him. She told him to get off. He responded, "[J]ust a little while." When he finally released her, Heather observed that he had to change his pants because he was wet.

In her bench decision, the trial justice stated that in determining the credibility of the witness, she "was impressed with the candor and the knowledge that [Heather] had as to the events as they occurred on the day in question." Even without the benefit of having observed the child on the witness stand, we must concur with the assessment of the trial justice. In our opinion, it is not likely that a five-year-old child could have fabricated the kind of detailed facts that Heather testified to at trial. We are satisfied, therefore, that the trial justice proper-

ly considered the four factors set forth in *Cabral* and that she did not err in permitting Heather to testify.

For these reasons, the appeal is denied and dismissed and the adjudication of delinquency is affirmed.