MAE ASHTON *vs.* EDWARD J. HIGGINS.

MAY 20, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CONDON, J. ⋅ This action of trespass on the case for negligence was tried to a jury in the superior court and resulted in a verdict for the defendant. The case is here on plaintiff's bill of exceptions to the denial of her motion for a new trial, to rulings on the admission of evidence, and to certain supplementary instructions which the trial justice gave to the jury at their request after they had begun their deliberations. We shall consider those exceptions in that order.

The plaintiff's cause of action arose out of a fall which she sustained in defendant's cafe in Providence on November 5, 1949 which resulted in personal injuries. The declaration

contains five counts, the first of which alleges substantially that it was defendant's duty to maintain his premises in a reasonably safe condition so that persons lawfully using the same in the exercise of due care would not be injured; but that unmindful of such duty he permitted one of the passageways to the ladies' rest room to be in an unsafe condition in that a metal strip was improperly affixed to the face of the step at an inside doorway leading to the toilet room by reason of which plaintiff, while walking along the floor at such doorway in the exercise of due care, caught the toe of her shoe at a place on the floor where said metal strip was improperly affixed and "tripped, stumbled and lost her footing, fell, and was violently thrown to the floor."

In the second count it is alleged that defendant permitted the entrance from the powder room to the toilet room to be in an unsafe condition in that the same was so constructed that the step leading to and from said toilet room was not reasonably apparent to one walking out of such room and that as a result thereof plaintiff, while in the exercise of due care, fell down said step with great force and violence.

The third count alleges that it was defendant's duty to have the step from the powder room to the toilet room of proper design and construction so that one lawfully using the same in the exercise of due care would not be injured, but that unmindful of said duty he permitted such step to be in an unsafe condition in that it was so improperly designed and constructed as not to be apparent to plaintiff, by reason whereof she fell and sustained serious and severe injuries.

It is alleged in the fourth count that it was the duty of the defendant to warn persons of such step who did not know of its location. And in the fifth count it was further alleged that she was not informed of the location of the step. She alleged that as a result of defendant's failure to warn her of the location of the step, she fell down said step with great force and violence and was thereby severely injured.

In support of the above counts plaintiff testified substantially as follows. On November 5, 1949 about 9:30 p.m. she and two friends, Mr. and Mrs. Edward J. Bracey, went to plaintiff's cafe. Upon their arrival Mr. Bracey took a seat at a booth while plaintiff and Mrs. Bracey retired to the ladies' room which was divided into a powder room and a toilet room. Entering from the main dining room they came to the powder room first and next, beyond a doorway leading therefrom, to the toilet room. The latter room was elevated slightly above the powder room so that at the doorway there was a step variously described by plaintiff and other witnesses as one-and-one-half or two inches high.

The plaintiff testified that she preceded Mrs. Bracey into the powder room and thence through that doorway into the toilet room. She further testified that she left the latter room before Mrs. Bracey; that on her way out at the doorway she stubbed the toe of her right shoe on a piece of metal stripping which "was sticking up a little higher" than the floor; and that as she put her left foot out she fell forward on her hands and knees. Mrs. Bracey testified that she did not see plaintiff fall but her attention was attracted by "a yell and a thud" and that she left the toilet room and saw plaintiff on the floor of the powder room on her hands and knees.

The workman who had installed the tile floor and metal stripping a few days before the accident testified for defendant that the metal strip or "bull nosing," as it was called in the linoleum trade, had a lip which was screwed into the toilet room floor after the strip was affixed to the edge of the step. He further testified that the asphalt tile of the floor was then laid over the lip right up to the edge of the nosing so that it was perfectly level with such edge. In cross-examination he stated that he was sure the floor where the tile was laid near the metal strip was level throughout

and not uneven in any respect. He further testified that he had finished the job the last part of October 1949.

Howard I. Harris, who was bartender and maintenance man at the cafe at the time of the accident but not at the time of the trial, was called by and testified for plaintiff. He stated that he is familiar with the layout of the cafe rooms and that there is a step about two inches high from the powder room to the toilet room; that there is a metal strip on the face of this step; that the asphalt tile of the toilet floor butts against the edge of the strip; and that he saw the strip being affixed to the step. He further testified that on the Sunday following the accident defendant called him and told him to "look around, to see if I could see what would cause an accident"; that he looked at this step and could not see anything wrong and then he ran his hand over the step, as the defendant had told him plaintiff "didn't trip going in," but "tripped coming out of the toilet room"; that he felt the top edge of the strip; and that it "was sticking up" one sixteenth or one eighth of an inch, but he could not be sure.

On cross-examination he admitted that although he was examining the strip on his hands and knees he did not see anything wrong with it until he ran his hand over it. He was then asked: "Q. And all you mean is that you felt the metal edge of this—What do you call it? This nosing. You felt the top, metal edge of this nosing as you ran your hand across it? A. I ran my hand across the tile; the top of it. Q. And you felt that metal edge? A. That's right."

The plaintiff called an architect, Edwin E. Cull, to testify as to the design and construction of the step. He stated that sometime in December 1950 at the request of plaintiff's counsel he examined defendant's premises, particularly the location of the accident; that he measured the step and found it to be one-and-one-half inches high; that the edge of the metal strip was one sixteenth of an inch above the tile; that such a step was not proper or "customary" con-

struction because it is not "expected" to be found in such a place as defendant's cafe, but that it should be not less than five inches; that a step of only one-and-one-half inches in such a place is dangerous because in his opinion people are not accustomed to such a low step; and that the safer way would be to construct a ramp in this location.

In our opinion the above is a substantial summary of all the evidence of any importance bearing on the question whether defendant was guilty of negligence in not providing a reasonably safe place for invitees lawfully on his premises, and on the further question as to what was the cause of plaintiff's fall. Under her motion for a new trial, plaintiff contended that this evidence clearly preponderated in her favor and therefore the verdict for defendant was contrary to the evidence and should be set aside. The trial justice disagreed with her view and expressly stated in his decision denying her motion that the verdict coincided with the evidence and did substantial justice between the parties; and he further observed that he himself did not feel that defendant was guilty.

From our reading of his decision we do not find that he misconceived the law or overlooked any important evidence in favor of plaintiff, and it does not appear that he failed to exercise his independent judgment. On the contrary we are of the opinion that he performed his duty in accordance with law in passing upon plaintiff's motion and hence we cannot disturb his decision unless it is clearly wrong.

After carefully reading the transcript and analyzing the evidence in the light of the several allegations of defendant's negligence we cannot say that such decision was clearly wrong. We have not found any evidence that the unusual low construction of the step or defendant's failure to give special warning of its existence had anything to do with plaintiff's fall. On the contrary she herself testified that it was the obstruction of the metal strip to her right foot which caused her to fall forward before she could place

her left foot down into the powder room. In view of such testimony the only question for the jury to consider was whether defendant was negligent as alleged in the first count.

From our examination of the transcript we are of the opinion that the weight of the evidence did not preponderate in favor of plaintiff's allegation that the metal strip had been improperly affixed to the step thereby creating an unsafe condition at the doorway in the toilet room. On the contrary it appears to us that on a reasonable construction of all the testimony the jury could have come to the conclusion that the strip was not improperly affixed even though the edge of it was slightly higher than the floor and that plaintiff's fall was not due to an unsafe condition caused by the manner in which such strip was affixed to the step. For this reason we think the trial justice's expressed view that on all the evidence he did not feel the defendant was guilty is not clearly wrong and, therefore, that he did not err in denying plaintiff's motion for a new trial. This exception is overruled.

The plaintiff is pressing numerous exceptions to rulings on the admission of evidence but has briefed most if not all of them in a perfunctory sort of way. However, we have considered each of them and find all but a few to be so lacking in merit as not to warrant specific treatment. Those deemed entitled to such treatment are considered below. All other exceptions are overruled without further discussion.

Exception 9 is to the following question asked of plaintiff in cross-examination: "Q. Did you state to the Rhode Island Hospital, in giving your hospital record, that you had persistent dizziness for a long period of time?" Prior thereto plaintiff testified that she had good health before the accident in the case at bar. In view of such testimony there would appear to be no valid objection to the above

question in the broad field of cross-examination. This exception is overruled.

During the course of the direct examination of the workman who installed the tile floor and metal stripping defendant's counsel asked the following question: "Q. So that paper makes the floor area level with this nosing?" The plaintiff objected to the question on the ground that it was leading and argumentative and moved that it be stricken. Exception 30 is to the denial of such motion. The objection was well taken because the question, although it may not be argumentative, is clearly leading. However, rulings on such questions are peculiarly within the province of the trial justice and will be reviewed by this court only for manifest abuse of his discretion. *Warren* v. *Warren,* 33 R. I. 71; *Wilson* v. *New York, New Haven & Hartford R.R.,* 18 R. I. 598. Since we perceive no such abuse here the exception is overruled.

The plaintiff has grouped exceptions 5, 6, 7, 10, 11, 29, 32 to 37 inclusive, and 39 and 40 concerning testimony about the physical condition of plaintiff and the testimony of the hospital librarian who had custody of the records containing the history which plaintiff had given at the time of her admission to the hospital. The librarian was called by defendant and interrogated as to such history for the purpose of impeaching the credibility of plaintiff.

The plaintiff objected to the testimony as inadmissible on three grounds. The first ground is that some of the questions were directed to matters about which plaintiff had testified that she "did not remember." The plaintiff claims that impeachment is not permissible in such circumstances. This is not correct. The law is clearly otherwise. A witness who denies remembering a statement may be considered for the purpose of impeachment as in effect having denied making it. *Jensen* v. *Michigan Central R.R.,* 102 Mich. 176. "There is ample authority to the effect that a witness may be impeached by proof of prior contra-

358

dictory statements, where he merely testifies that he does not remember, or has no recollection of, making the statements referred to." 58 Am. Jur., Witnesses, §780, p. 430.

The second ground is that some of the questions addressed to her in cross-examination were not contradictory but she does not identify such questions. This ground is, therefore, not entitled to any consideration.

Her third ground is that the hospital record was not connected by competent evidence with the fact that at the time of the accident she was suffering any effects from her past medical condition as set out in the history. This is not a necessary prerequisite for introducing the history solely for the purpose of impeachment. All of the exceptions based on the above grounds are, therefore, overruled.

During the trial plaintiff's medical witness testified concerning certain X-ray photographs and he used a viewing machine to aid him in explaining what they disclosed. At the end of the trial plaintiff moved that the viewing machine be sent into the jury room along with the papers and the exhibits. The trial justice denied the motion and plaintiff excepted. This is exception 41. In support of such exception she contends that the trial justice erred and cites *Williams* v. *Altruda*, 74 R. I. 47. In that case we approved the use of a viewing machine at the trial and stated that if a scientific explanation by the witness could be made more understandable by an ocular demonstration with the aid of a machine, we saw no reason to deprive the jury of such assistance. But that case is not authority for sending the machine into the jury room where if it could be and was used by them at all it would be without the aid of the expert witness who used it to explain more fully his scientific testimony concerning the X rays. We think the trial justice did not err in excluding the machine from the jury room. Exception 41 is, therefore, overruled.

After the jury had retired to consider their verdict they returned to the courtroom and requested the trial justice

to answer the following questions which they had submitted to him in writing: "Is there any law stating how high a step should be?" "Is there any law stating that a sign should be posted on such a low step?" He answered each question categorically in the negative and then asked the jury if they desired any further instruction and their foreman replied: "No, I don't think so, Your Honor."

Immediately after the jury had left the courtroom one of plaintiff's counsel arose and said: "The only thing I wanted to say was that I think Your Honor should *reinstruct* them on what the duty is of the Defendant as to providing a reasonably safe passage." (italics ours) The trial justice replied: "Are you taking exception to what I said in my answer?" The other counsel for plaintiff answered: "No, I don't think so." Thereafter a colloquy ensued in which plaintiff's counsel took no exception to the trial justice's answers but simply stated he felt that "there should have been an explanation as to those answers; as to what would be reasonable conduct on the part of the Defendant." The trial justice did not agree and thereupon allowed plaintiff an exception which is numbered 42 in the bill of exceptions.

The plaintiff has briefed such exception as though it were taken explicitly to the answers of the trial justice. She states under point I of her brief: "There was error in the answers which the trial judge gave to the questions propounded by the jury to the court when the jury after beginning its deliberations asked for further instructions." We do not think the record shows an exception which would raise that issue here. On the contrary the exception was plainly to the trial justice's refusal to supplement his answers as requested by plaintiff's counsel. On that matter we are clearly of the opinion that the trial justice did not err. In the main charge he had already satisfactorily covered that phase of the law, and furthermore the jury had not indicated that they needed additional instruction

in that respect. To have gratuitously *reinstructed* them at that time might well have confused them, since they had returned to the courtroom solely for the purpose of clearing up two difficulties which they had specifically raised in their written questions. The plaintiff's exception 42 is, therefore, overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Eugene J. Sullivan, Jr., Albert Lisker,* for plaintiff.

*William A. Gunning,* for defendant.