238 A.2d 383.

MAFALDA URBANI *vs.* ORESTE RAZZA.

FEBRUARY 15, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   This is a civil action to recover damages for an alleged breach of an express contract.   Following the entry of a judgment in the superior court on a jury verdict for the defendant, the trial justice denied the plaintiff's motion for a new trial, and the plaintiff appealed.   The only ground urged on the appeal is to an evidentiary ruling.

The parties are sister and brother.   The plaintiff owned a 1960 Chevrolet station wagon; her brother a 1955 Pontiac. In 1963 she purchased a new automobile, traded in his 1955 Pontiac and transferred her station wagon to him.   On these facts there is no dispute.   The conflict in the testimony is on whether the transaction was one of sale or of gift.   The plaintiff testified that it was a business transaction, and that her brother agreed to pay her the difference between the value of the station wagon and what she received as a trade-in allowance on the Pontiac.   The brother's version that the automobiles were exchanged as gifts was corroborated by the affidavits which the parties filed with the tax administrator.   In them each claimed an exemption from the sales tax and stated in substance that the transfer of his or her vehicle to the other was intended as a gift.   On this evidence the jury were instructed that they had but two choices—return a verdict for plaintiff in the amount of $1,282.45 or one for defendant.   They found for defendant.

The appeal is based on an evidentiary ruling which occurred during the direct examination of plaintiff.   She had testified in essence that she and her brother had driven their respective vehicles to Butler Auto Sales, Inc., where the new car was purchased and the 1955 Pontiac traded in, and that it was there that they "* * * had the dealer price the '60 wagon * * *."   She was then asked what price she and

her brother had agreed upon for the station wagon and she responded "$1,282.45." The next question was how they had arrived at that figure and, instead of detailing the simple arithmetical exercise which produced the result, she replied "Because the wagon at that time was worth $1,-788.00." At this point defendant objected.

Whether plaintiff had by then concluded her answer, or instead had been interrupted and her answer cut short by the objection, the record does not disclose. In any event, a discussion relating to the question then ensued between court and both counsel, and thereafter substantially the same question was again posed to the witness. Again there was objection. The trial justice found in the question a hint by plaintiff's attorney "* * * to the witness that she gave the wrong figure" and an attempt "* * * to suggest to her that she made a mistake." Upon those findings he ruled that the question was leading, and that the witness could not testify further on how she and her brother arrived at the figure of $1,282.45.

It appears from an offer of proof which was made in the absence of the jury that the witness, if allowed to answer, would have testified that the sum of $1,282.45, which she said defendant had agreed to pay for her station wagon, had been arrived at by deducting the amount of $505.55 received on the trade-in of the 1955 Pontiac from the appraisal value of $1,788 which had been put on the station wagon by a Butler Auto salesman.

The issues for us are whether the question was proper, and if so, whether plaintiff was prejudiced by the exclusion.

It has, of course, long been settled that the admission of leading questions is within the discretion of a trial justice, *State* v. *Tracey*, 12 R. I. 216; *Cole* v. *Barber*, 33 R. I. 414, 82 A. 129. In the exercise of that discretion he has "considerable latitude," *Lanni* v. *United Wire & Supply Corp.*, 87 R. I. 121, 128, 139 A.2d 149, 153, and his rulings will be

448

reviewed "only for manifest abuse of his discretion," *Ashton* v. *Higgins,* 80 R. I. 350, 357, 96 A.2d 632, 636, or where "substantial injury has been done," *Wilson* v. *New York, N. H. & H. R.R.,* 18 R. I. 598, 601, 29 A. 300, 301.

What we review here, however, is not whether the trial justice erred in allowing a leading question, but whether the question was improper and the testimony sought to be elicited therefore inadmissible. It is often said that a leading question is one which suggests the desired answer. *Williams* v. *Smith,* 29 R. I. 562, 72 A. 1093. More precisely, however, a suggestive question is leading and hence improper only if "* * * it so suggests to the witness the specific tenor of the reply desired by counsel that such a reply is likely to be given irrespective of an actual memory," *United States* v. *Durham,* 319 F.2d 590, 592, or if it "* * * is framed so that by its answer through a 'yes' or 'no' on the part of the witness the witness is empowered to echo back the words of counsel, and thus give the desired answer in the desired form upon a point material to the disposition of the case * * * ." *Texas Employers' Ins. Ass'n* v. *Hughey,* Tex. Civ. App., 266 S.W.2d 456, 458.

In commenting on which suggestive questions are proper and which improper, Professor Wigmore says:

> "Questions may legitimately suggest to the witness the *topic* of the answer: they may be necessary for this purpose where the witness is not aware of the next answering topic to be testified about, or where he is aware of it but its terms remain dormant in his memory until by the mention of some detail the associated details are revived and independently remembered. Questions, on the other hand, which so suggest the *specific tenor of the reply as desired by counsel* that such a reply is likely to be given irrespective of an actual memory, are illegitimate." 3 Wigmore, Evidence (3d ed.) §769, p. 122.

In this case, the witness, questioned about how she and her brother had arrived at a sale price of $1,282.45, said that

the value of the station wagon was $1,788. That answer, although partially responsive, was obviously not complete. When it was repeated, defendant objected, and the trial justice sustained. What undoubtedly prompted its repetition was counsel's dissatisfaction with the answer he had received, as well as his reasonable expectation that plaintiff would add to what she had already said. The question, even though thus purposed, did not so suggest the specific tenor of the desired reply that the witness was likely to give it irrespective of her actual memory. Neither did it furnish the witness with any information beyond her ability to recall. The question, therefore, was not leading and it was error to sustain the objection to it.

That the ruling was erroneous and foreclosed further inquiry into the subject matter does not necessarily call for a reversal inasmuch as an exclusion of evidence, even if wrongful, will not suffice for that purpose unless it causes "substantial injury," *Wilson v. New York, N.H. & H. R.R.,* *supra.* Injury to that degree occurs only if the evidence excluded was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would probably have influenced the verdict or had a controlling influence on a material aspect of the case. *Central Soya Co. v. Henderson,* 99 R. I. 388, 208 A.2d 110; *Marley v. Providence Journal Co.,* 86 R. I. 229, 134 A.2d 180; *Warren v. Warren,* 33 R. I. 71, 80 A. 593. Only infrequently does an exclusion of evidence have such an effect. Whether it did in this case is the problem.

Although there was only a single issue of fact for the jury, they had difficulty in reaching agreement. At one stage of their deliberations, they returned to the courtroom and the trial justice, after being advised that they were in disagreement, instructed them further and urged them to return to the jury room, hopefully to resolve their differences. After renewing their deliberations, they again returned to the

courtroom, but instead of announcing a verdict, the foreman, on behalf of the jury, advised the trial justice "There is a little doubt as to the time and date of the appraisal of the 1960 Chevrolet." A portion of the transcript was then read to the jury, and they were told that there was no testimony that an appraisal had been made. Thereupon, the foreman without further ado, announced "As of that, we have reached a verdict."

On the one hand it can be argued that the only conclusion that can reasonably be drawn from this bizarre sequence of events is that the jury were so vitally interested in ascertaining whether or not the plaintiff's story was corroborated by testimony that the station wagon was appraised at the time the parties exchanged vehicles, that their verdict would probably have turned upon the presence or the absence of such evidence. What other construction, that argument goes, can reasonably be given to the coincidence of the advice to the jury that there was no evidence of an appraisal and the foreman's immediate response that "As of that, we have reached a verdict."

The argument on the other side is that it would be pure speculation to say that the excluded evidence would with reasonable probability have affected the verdict, and that a reversal should not be predicated on conjectural emendation. *Oddo* v. *Cardi*, 100 R. I. 578, 218 A.2d 373.

The peculiar circumstances of this case lead us to conclude that the plaintiff was substantially injured by the ruling excluding the proffered evidence.

The plaintiff's appeal is sustained and the judgment appealed from is reversed.

*Kirshenbaum & Kirshenbaum, Howard I. Lipsey,* for plaintiff.

*Warren M. Pulner, George A. Pliakas,* for defendant.