**STATE**

v.

**Robert E. GIROUARD.**

No. 88–112–C.A.

Supreme Court of Rhode Island.

July 6, 1989.

James E. O'Neil, Atty. Gen. and Caroline C. Cornwall, Sp. Asst. Atty. Gen., Providence, for plaintiff.

Francis X. Mackey, Providence and Donna A. Uhlmann, Cranston, for defendant.

## OPINION

MURRAY, Justice.

A Superior Court jury found Robert E. Girouard (Girouard) guilty of one count of first degree child molestation sexual assault. He appeals his conviction. We affirm.

The defendant was charged with two counts. The first count was first degree child molestation sexual assault in violation of G.L. 1956 (1981 Reenactment) §§ 11–37–8.1 and 11–37–8.2, as enacted by P.L. 1984, ch. 59, § 2. The second count was second degree child molestation sexual assault in violation of G.L. 1956 (1981 Reenactment) §§ 11–37–8.3 and 11–37–8.4, as enacted by P.L. 1984, ch. 59, § 2. The first count occurred in Central Falls, Rhode Island, and the second allegedly occurred in Providence, Rhode Island. At trial the victim was unable to testify in regard to the second count, and that charge was dismissed.

Sally was the victim of the assault. She was four years old when it occurred. (The victim's name has been changed.) At the time of trial, Sally was six. A voir dire was conducted to ascertain her competency to give testimony. When asked if she knew what it meant to tell the truth, Sally said she did. She also promised to tell the truth to the judge. When questioned whether she knew the difference between a truth and a lie, Sally shook her head no. When asked if the truth was good or bad, she responded that the truth is good. She said a lie was bad. The trial justice also asked Sally:

"Q. What happens to you when you tell a lie?

"A. My mom spanks me * * *.

"Q. [Sally], what color jacket do I have on?

"A. Blue.

"Q. Okay. If I tell you that I'm wearing a red jacket, is that the truth or a lie?

"A. A lie."

Sally was unable, however, to describe defendant or to recall what presents she received for Christmas or her last birthday. The trial justice found Sally competent to testify.

At trial, Sally testified that one day she was at her home in Central Falls with Uncle Bobby and Uncle Johnny. She testified that Uncle Johnny asked Uncle Bobby, defendant Robert Girouard, to wash her. Sally recounted that defendant took her into the bathroom, wrapped a towel around her eyes, and asked her if she wanted a lollipop. She said yes, and defendant put his penis into her mouth. When the prosecutor asked Sally what a penis is, she said she didn't know. The prosecutor then showed Sally a diagram of a male body. Sally correctly identified a penis. When asked how she knew what she had in her mouth when her eyes were covered, Sally replied "[b]ecause it was soft." When asked how she knew it wasn't a finger, Sally replied "[i]t was big." Sally testified that Uncle Bobby told her not to tell anybody what happened. She made an in-court identification of Girouard.

Sally's mother testified that during the time the assaults occurred, she lived with her two children in an apartment in Central Falls. The defendant's brother, John Girouard, also lived in the apartment. Sally's mother testified that she considered John and Robert Girouard her stepbrothers as her mother and their father had cohabitated. She stated that Robert Girouard visited the home often. The defendant was known to Sally as Uncle Bobby, and John Girouard was known to Sally as Uncle Johnny. She testified that she first became aware of the assault when her sister suggested that she have a talk with Sally. After Sally told her mother what had transpired, her mother contacted the Rape Crisis Center, the police, and the Department of Children and Their Families. Sally's mother also took Sally to counseling.

Prior to the assault Sally was toilet trained and did not need assistance going to the bathroom. In the months after the assault, however, Sally's behavior changed. Sally's mother testified that she and Sally were at a McDonald's restaurant and they went into the bathroom. Sally's mother let Sally into the stall, and when the door closed behind her, Sally screamed as if someone were killing her. Sally's mother

recounted that she went to the door of the stall, and Sally clung to her, shaking. After this occurrence, Sally always had to have the door to the bathroom open because she was afraid.

During the trial but prior to Sally's testimony, defense counsel made a motion to suppress Sally's upcoming identification of defendant. At this time, the jury left the courtroom and a hearing was conducted. Sixteen-year-old Glen Girouard, another of defendant's brothers, testified that he saw Sally's mother whispering in the child's ear and pointing at defendant who was sitting in the courtroom. Sandra Girouard, Robert's and Glen's mother, corroborated this assertion. Sally's mother testified that she had not pointed out defendant to her daughter, but only asked Sally if she recognized anyone. The trial justice noted that he did not believe Sally's mother's testimony that she was not pointing out defendant. However, the trial justice ruled that the forthcoming identification would not be tainted. He denied the motion to suppress.

This case presents six issues. The first issue is whether the trial justice erred in finding the child witness competent to testify. The second is whether the victim's in-court identification was properly admitted to evidence despite allegations of prosecutorial misconduct, and the third is whether the trial justice erred in overruling defendant's objections to purportedly leading questions. The fourth inquiry is whether it was error to deny defendant's motion for judgment of acquittal, and the fifth is whether it was error to deny defendant's motion to pass. The final query is whether the trial justice erred in denying the motion for a new trial. We affirm the Superior Court judgment in its entirety.

I

A witness must be competent to testify for his or her testimony to be admitted into evidence. When an individual is called to testify, he or she initially may be presumed a competent witness. *McCormick on Evidence*, § 62 at 152 (Cleary 3d ed. 1984); *see also* R.I. Rul. Evid. 601. If there is uncertainty in regard to a potential witness' com-

petency, a voir dire examination should be conducted outside the presence of the jury. A voir dire hearing is used to ascertain the competency of a child witness.

 Although there may be questions regarding the reliability or accuracy of a child's account of events, rather than disregard a child's testimony *"the preferable course is to accept a child's story for what it seems to be worth,* as ascertainable upon testifying * * *."* *In re Gerald,* 471 A.2d 219, 221 (R.I.1984) (quoting 6 Wigmore, *Evidence,* § 1821 at 405 (Chadbourn rev. 1976)). There are four testimonial capacities that are required for a child to be found competent to testify. This court has stated:

"[A] child may not testify unless and until the trial justice has been satisfied that the proposed witness can (1) observe, (2) recollect, (3) communicate (a capacity to understand questions and to furnish intelligent answers), and (4) appreciate the necessity of telling the truth." *State v. Cabral,* 122 R.I. 623, 628–29, 410 A.2d 438, 442 (1980).

It is the trial justice who must determine whether these capacities are present in a potential child witness. *In re Gerald,* 471 A.2d at 221. Among these four capacities, the fourth has caused particular concern. We have held that a child has shown an appreciation of the necessity of telling the truth if the child understands: the meaning of telling the truth and of telling a lie, that when the child testifies he or she must tell the truth, and that persons who do not tell the truth are punished. *State v. Mandarelli,* 105 R.I. 696, 700, 254 A.2d 738, 741 (1969). A child need not articulate magic words that he or she knows the difference between a lie and a truth as long as the child understands the definitions of both and was there to tell the truth. *In re Gerald,* 471 A.2d at 220–21; *see also State v. Pettis,* 488 A.2d 704, 706 (R.I.1985). We now turn to an application of these principles to the present case.

As to observation, Sally's testimony demonstrated her ability to observe. Sally testified that Uncle Bobby took her into the bathroom, shut the door, and they were

alone. It is true that Sally later had a towel covering her eyes, but observation does not depend upon sight alone. One may observe with all the senses. Sally testified she felt Girouard put something into her mouth and she described it as big and soft, and identified it as a penis. Sally's testimony indicated a capacity to observe.

As to recollection, Sally's relation of the above incident demonstrates that she had the ability to remember and did indeed remember. The defendant notes that Sally did not remember what gifts she received for Christmas or for her birthday. However, the trial was in mid-June, while Christmas was in December and Sally's birthday had been in September. For a child to receive presents is a normal occurrence and that which is usual is easily forgotten. A sexual assault, however, is a traumatic event and as such is memorable. Sally's mother testified that as a result of the assault, Sally was unable to use the bathroom by herself because she was afraid. It is reasonable to believe that Sally did remember the assault as it was still having a great effect on her.

Sally also demonstrated an ability to communicate. She related the facts of the crime both at the competency hearing and before the jury. It is true that Sally did exhibit some bashful behavior. For instance, when asked what a penis is, she said she didn't know. However, when shown a diagram Sally could point to the penis and make a mark across the penis. Similarly, she was not willing to describe Girouard's appearance, but she did identify him by stating where he was sitting in the courtroom and the color of his clothing. It is normal that these questions may be emotional and embarrassing for six-year-old Sally. While it is true she was bashful, Sally's responses indicated her capacity to understand questions and to furnish intelligent answers.

■ The fourth testimonial capacity is an appreciation of the necessity of telling the truth. During the voir dire and again on direct examination, Sally said that the truth is good and a lie is bad. At the hearing and on direct examination, Sally promised to tell the truth. At the voir dire hearing, Sally responded that she did not know the difference between the truth and a lie, but she knew what it meant to tell the truth. Both at the hearing and at trial, Sally was able to identify an example of a lie, and stated that when she lied her mother punished her. We believe Sally appreciated the necessity of telling the truth. The trial justice did not err in finding the child witness competent to testify.

## II

The second issue is whether the victim's in-court identification was properly admitted into evidence despite allegations of prosecutorial misconduct. Diverse types of behavior may constitute prosecutorial misconduct, and we note that underlying such misconduct may be a prosecutor's mistaken belief that his or her role is to obtain a conviction rather than a just result. *See State v. Powers*, 526 A.2d 489, 494 (R.I. 1987). The dismissal of an indictment because of prosecutorial misconduct is reserved for very limited and extreme circumstances. *State v. Romano*, 456 A.2d 746, 750 (R.I.1983).

■ In the present case, the defense asserts that the prosecuting attorney and the victim's mother conspired to have the victim identify defendant regardless of whether the identification would be mistaken and therefore the identification was tainted and the indictment must be dismissed. The defendant claims that Sally's mother pointed out defendant to Sally and that by having done so, Sally's mother was an agent for the state. We find this contention without merit. We are unsure whether Sally's mother pointed out defendant. At the hearing she denied having done so. On the other hand, those stating they saw Sally's mother pointing at defendant were defendant's brother and mother and as family members could be partisan witnesses. However, assuming arguendo that Sally's mother did point out defendant, no factual basis has been offered upon which we could conclude that such action was prosecutorial misconduct. It is possible to inter-

pret defendant's argument to suggest that the behavior of Sally's mother was misconduct due to her own prejudice against defendant. However, Sally's mother testified at trial and defense counsel cross-examined her. Thus the defense had the opportunity to expose any facts supporting such supposed prejudice. The bare assertion that a witness was acting in concert with the state without a factual basis of agreement between such witness and the prosecution does not constitute prosecutorial misconduct. The trial justice did not err in denying defendant's motion to dismiss the indictment because of prosecutorial misconduct.

### III

■ The third issue is whether the trial justice erred in overruling defendant's objections to purportedly leading questions. A leading question is most generally defined as a question that suggests the desired answer. *Urbani v. Razza*, 103 R.I. 445, 448, 238 A.2d 383, 385 (1968). The danger of a leading question is that it may suggest to the witness the specific tenor of the reply desired by counsel and such a reply may be given irrespective of actual memory. *Id.* While it is true that as a general rule leading questions are prohibited on direct examination, a trial justice has considerable latitude in sustaining or overruling objections to leading questions. *Id.* at 447, 238 A.2d at 385; *see also Lanni v. United Wire & Supply Corp.*, 87 R.I. 121, 128, 139 A.2d 149, 153 (1958). As the admission of leading questions is within the discretion of the trial justice, his or her ruling upon this matter will be overturned only upon an abuse of discretion or where there is substantial injury to the defendant. *Urbani v. Razza*, 103 R.I. at 447, 238 A.2d at 385.

■ There are exceptions to the rule prohibiting leading questions on direct examination. Recognized exceptions are well established under Rhode Island practice. This court has stated:

"While it is true that, as a general rule, leading questions are inadmissible, the rule has its exceptions * * *. [T]hey are

permissible when the witness appears to be hostile * * * or where an omission in * * * testimony is evidently caused by a want of recollection which a suggestion may assist." *Wilson v. New York, New Haven & Hartford R.R. Co.*, 18 R.I. 598, 601, 29 A. 300, 301 (1894).

Thus on direct examination, leading questions may be asked of a hostile or a forgetful witness. Also within a trial justice's discretion is the allowance of leading questions of a child or other witness of diminished understanding. *See* 3 Wigmore, *Evidence*, § 778 (Chadbourn rev. 1970).

■ In the instant case, three questions are asserted as leading. These questions were posed at various points during the direct examination of Sally:

1. "Q. Did you tell the jury before that your eyes were covered with a towel? (Objection made and overruled.)
 "A. Yes."

 * * * * * *

2. "Q. Did something like the Central Falls incident happen again in Providence? (Objection made and overruled.)
 "A. I don't know."

 * * * * * *

3. "Q. It was just you and your Uncle Bobby? (Objection made and overruled.)
 "A. Yes."

With respect to the first question, we believe it was leading. The question, however, was a reiteration of testimony Sally had just given, and these facts were already in evidence. Thus there was no substantial injury to defendant from the question and the trial justice did not abuse his discretion in overruling the objection to it. The second question at issue is whether a similar incident occurred in Providence. Although this question is leading, Sally refused to be led as her response was "I don't know." This question referred to the charge that was dismissed as Sally was unable to testify regarding this allegation. There was no substantial injury to defendant because of this question and the trial justice did not abuse his discretion. The

third query was posed at the end of a series of questions to which Sally had answered that her other uncle was not in the bathroom, no one else was present, and the bathroom door was shut. Although this question is leading as it suggests an answer, it was Sally who had given the information upon which the question was based. Thus as with the first question, defendant did not suffer substantial injury and the trial justice did not abuse his discretion.

## IV

The fourth inquiry is whether the trial justice erred by denying defendant's motion for judgment of acquittal based on two grounds. The first ground is the insufficiency of the evidence and the second ground is his status as a juvenile prevented the Superior Court from having jurisdiction over his case.

 When considering a motion for judgment of acquittal based on the insufficiency of the evidence, the trial justice must determine whether the evidence presented is capable of generating proof of guilt beyond a reasonable doubt. *State v. Caruolo*, 524 A.2d 575, 580–81 (R.I.1987). The trial justice and this court on review must view the evidence in the light most favorable to the state and draw all reasonable inferences consistent with guilt, and may not weigh the evidence or assess the credibility of the witness. *Id.* at 581. If the evidence presented is capable of generating proof of guilt beyond a reasonable doubt, the trial justice must deny the motion. *State v. Burke*, 522 A.2d 725, 734 (R.I. 1987).

 The defendant was charged with first degree child molestation sexual assault. A person is guilty of this crime if:

"[H]e or she engages in sexual penetration with a person thirteen (13) years of age or under." Section 11–37–8.1.

There are two essential elements to first degree child molestation sexual assault. First, the defendant must have engaged in sexual penetration of the victim. Second, the victim was age thirteen or younger. Evidence capable of generating proof of guilt beyond a reasonable doubt on the

first element was presented when Sally testified that Girouard put his penis into her mouth. Evidence capable of generating proof of guilt beyond a reasonable doubt on the second element was presented by the undisputed testimony that Sally was four years old at the time of the crime. Viewing this evidence in the light most favorable to the prosecution, the trial justice did not err in denying the motion for judgment of acquittal.

 The Family Court has jurisdiction in matters relating to delinquent children under G.L.1956 (1985 Reenactment) § 8–10–3(a). *State v. Mastracchio*, 546 A.2d 165, 168 (R.I.1988). However, there are circumstances in which jurisdiction over a delinquent child will be in the Superior Court rather than in Family Court. For example, if a child sixteen or older but less than eighteen when the alleged criminal conduct occurred is charged with an offense which would render such child subject to indictment if he or she were an adult, the Family Court, after conducting a waiver hearing, may waive jurisdiction over the child and order such child tried as an adult. *See Knott v. Langlois*, 102 R.I. 517, 520–25, 231 A.2d 767, 768–70 (1967); G.L. 1956 (1981 Reenactment) § 14–1–7. Similarly, Family Court jurisdiction over a child's case may be automatically terminated once a child sixteen or older has, after sixteen, committed two prior offenses which would have subjected the child to an indictment if he or she were an adult. *In re Dennis A.*, 501 A.2d 735, 736 (R.I.1985); G.L.1956 (1981 Reenactment) § 14–1–7.1, as amended by P.L.1984, ch. 246, § 1.

 In the instant case, Robert Girouard was born on March 4, 1967. He reached his sixteenth birthday on March 4, 1983. By July 13, 1983, defendant twice had been found delinquent by the Family Court. The first finding of delinquency was on April 15, 1983, for committing larceny on April 9, 1983. The second finding of delinquency was on July 13, 1983, for breaking and entering on June 17, 1983. As of the second finding of delinquency, Girouard was automatically waived from Family Court jurisdiction for further

charges brought against him. The trial justice did not err in denying the motion for judgment of acquittal based on lack of jurisdiction.

## V

The fifth issue is whether it was error to deny defendant's motion to pass. Under Rhode Island practice, a motion for a mistrial is also called a motion to pass the case. *See State v. Brown*, 528 A.2d 1098, 1103 (R.I.1987). A defendant may complain of improper and prejudicial remarks made by the prosecution at trial, and a motion to pass may be predicated upon such remarks. When a defendant makes such a claim, the trial justice must assess the prejudicial impact of such comments. *State v. Brown*, 522 A.2d 208, 210 (R.I.1987). If the trial justice finds the prejudice inexpiable, the motion to pass should be granted. If the trial justice finds the prejudice can be cured, timely and effective instructions should be given. *Id.* A trial justice's denial of a motion to pass is accorded great weight and will not be disturbed unless clearly wrong. *State v. Mastrofine*, 551 A.2d 1174, 1177 (R.I.1988). Prejudicial remarks that in some circumstances may be sufficient to require the granting of a motion for a mistrial is an empty-chair reference.

An empty-chair reference is a statement at trial by counsel questioning why the adversary has not called a particular witness to give testimony. In closing arguments to the jury, an attorney may dramatically pose the question, "why was the witness chair empty?" Such a comment by the prosecution is improper as it may suggest to the jury that a defendant has some burden to prove his or her innocence. *See State v. LaPointe*, 525 A.2d 913, 914 (R.I.1987). When an empty-chair comment is made by the state, defense counsel should object and request cautionary instructions. *State v. Taylor*, 425 A.2d 1231, 1234 n.3 (R.I.1981). In *Taylor*, this court noted that as a general rule defense counsel must make timely objections and requests for cautionary instructions on an empty-chair reference to preserve this is-

sue for appeal. *Id.; see also State v. Clark*, 423 A.2d 1151, 1160 (R.I.1980).

In the instant case, the prosecuting attorney stated in his closing argument:

"[T]he testimony of the complaining witness is largely uncontroverted. * * * The only issue for you to decide here, it's pretty simple, is credibility. It's even easier than that because you don't have to look at two conflicting stories. You're only looking at one account of the incidents."

The defendant asserts that these remarks constitute an empty-chair reference and that he suffered inexpiable prejudice. However, at the time the prosecuting attorney made this comment, defense counsel objected but failed to request a curative instruction. We find no basis in the state's comment to make an exception to the rule that curative instruction must be posed to preserve the issue for appeal. Therefore this issue was not preserved for appeal, and we do not consider it.

## VI

Our final inquiry is whether the trial justice erred in denying the motion for a new trial. The standard for appellate review of a trial justice's rulings on a motion for a new trial is that such ruling is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989); *State v. LaPointe*, 525 A.2d at 914. In considering a motion for a new trial, a trial justice assumes the role of a superjuror because of his or her more experienced judgment. *Id.* at 1207–08, *State v. LaPointe*, 525 A.2d at 914.

There are three or four analyses a trial justice should undertake in order to rule on a motion for a new trial. In making these analyses, a trial justice should place in the record one or two sentences giving his or her reasoning and conclusion on each point. The first analysis is to consider the evidence in light of the charge given the jury which charge is presumably correct as to the law and fair to the defen-

dant. *See id.* The second analysis is for the trial justice to determine his or her own opinion of the evidence: what weight and credibility does he or she give to the witnesses and other evidence, and what conflicting testimony and evidence does the trial justice accept or reject. The trial justice should consider all of the material evidence, but need not place an exhaustive examination in the record. *See id.* The third analysis is whether if in his or her independent assessment of the evidence and in light of the charge to the jury, the trial justice determines that he or she would have reached a different result than the jury reached. If the trial justice concurs with the jury, then at this point the motion for a new trial should be denied. *See id.* We believe that implicit in the trial justice's concurrence is the opinion that the verdict does substantial justice.

The fourth step arises when, and only when, a trial justice differs with the jury. When the trial justice determines he or she would have reached a different result than the jury reached, the trial justice must then determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice. If the verdict is against the fair preponderance of the evidence or fails to do substantial justice, then the trial justice may grant a new trial. *Id.* However, in those instances in which the trial justice determines that the evidence and reasonable inferences drawn therefrom are so nearly balanced that reasonable individuals could arrive at different results, the new-trial motion should be denied. *Id.*

In the present case, when the trial justice considered the motion for a new trial, he first considered the evidence and his jury instructions and the applicable law. Second, the trial justice himself assessed the evidence and stated that he found Sally a credible witness. Third, the trial justice expressed his opinion that after considering the jury charge and the evidence, he agreed with the jury's verdict. After examining the record, we believe the trial justice correctly applied the standard for a new trial.

The defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of this case are remanded to the Superior Court.