STATE
v.
Edmond J. BROWN.
No. 89–231–C.A.
Supreme Court of Rhode Island.
May 4, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Caroline Cole Cornwell, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

This case comes before the court on the appeal of the defendant, Edmond J. Brown, from a jury verdict of guilty on all nine counts of a first-degree-sexual-abuse indictment. Edmond J. Brown (defendant) was sentenced to twenty years for count 1; twenty years for count 2, to be served consecutively to the sentence for count 1; twenty years for count 3, ten to serve, ten suspended with probation, to be served consecutively to the sentences for counts 1 and 2; and twenty years on each count, counts 4 through 9, to be served concurrently with the sentences for counts 1, 2, and 3. The defendant, in sum, faces a sentence of fifty years to serve, with ten years suspended and ten years probation.

The defendant raises several issues on appeal, claiming that the trial justice abused his discretion by allowing the state to use leading questions with the complaining witness, by allowing the state to introduce evidence beyond the bill of particulars, and by allowing the state to introduce into evidence a pornographic catalog bearing defendant's name on the mailing label. Furthermore, defendant alleges that the trial justice erred in his charge to the jury instructing the jurors that they could find defendant guilty in regard to each of the nine counts, basing their findings upon evidence that was beyond the bill of particulars. It is our considered opinion that the trial justice erred in charging the jury beyond the bill of particulars, and we therefore vacate the judgments and remand for a new trial. In the interest of judicial economy we address other nondispositive issues raised on appeal in order to assist the trial justice at defendant's new trial.

At defendant's trial before a jury on various days between November 22, 1988, and February 3, 1989, the following facts were elicited. Edmond Brown met his wife (Mother) in August of 1979 and they were married two months later. At this time

defendant moved into the family home with his new wife and her two children, to whom we shall refer to as Amy, aged 7½, and Rob, aged 10. In March of 1981 a baby girl was born to the couple whom we shall call Lynn. Shortly after her birth, defendant legally adopted Amy and Rob.

After maternity leave, Mother returned to her work in a doctor's office. In 1982 Mother began working part time at a hospital during the weekends and then in the evenings, in addition to her full-time day job. Eventually she began working full time at the hospital. Her hours were 3 to 11 p.m. Tuesdays through Saturdays, but she sometimes worked overtime until 2 or 3 a.m.

The defendant worked as a jeweler for twenty-five years until he retired in 1987. The defendant then became the parent with the primary responsibility of caring for the children. He was very strict and believed in corporal punishment. When Mother objected to his methods of discipline early on in the marriage, defendant deferred to her even though he disagreed. Mother testified that he never hit the children thereafter.

The eldest daughter, Amy, testified that near the start of the marriage, defendant became "unusually intimate" with her while her mother was not at home, both during the day and at night. He would tell her to remove her clothes, and he would take off his own. He touched her and penetrated her with his hand, his "male organ," and a banana. He also bought her a rubber penis and showed her how to use it in order to stretch her vagina. He made her read sexually explicit books and magazines. Amy testified that defendant had intercourse with her on a daily basis and sometimes more than once a day up until she was about twelve or thirteen years old. At this point she began to refuse to do as he wished, and he would often harass her in order sometimes to get his way.

For years Amy did not tell anyone about her father's sexual behavior because defendant convinced her that no one would believe her. Early in May of 1988, when Amy was sixteen years old, she told her best friend of the sexual abuse. She stated that she could not take it anymore. On May 18, 1988, Amy attempted suicide by swallowing antihistamine pills. She left a suicide note with her best friend, which stated: "I'm tired of HIM touching me, I'm tired of not being able to tell anyone * * * I know I'm running away from my problems but it hurts so much to think about what HE did to me."

The defendant denies Amy's allegations. He testified that he and Amy had a close father/daughter relationship. Every Sunday the family would attend church together, where he and his wife sang in the choir. He also submitted that he was involved with the church as a member of the parish council and as the collector and sexton for the children's mass. The defendant denied keeping sexually explicit materials in the house, let alone forcing Amy to read them. When the state, over objection, introduced a catalog of sexual devices with defendant's name on the label, defendant claimed that it had been sent to him unsolicited and had inadvertently fallen into his drawer.

At the close of testimony the trial justice informed the jury that it might convict defendant of sexual penetration as alleged in count 1 "by any object * * * which includes but not limited to, digital or any object into the genital opening." As far as the other counts were concerned, the trial justice again charged that the crime may be proven by penetration "either penile or any object, however slight, into the vaginal opening." On November 29, 1988, the jury returned verdicts of guilt on all nine counts, and defendant was sentenced on February 3, 1989.

Upon appeal, defendant first claims that the trial justice abused his discretion by allowing the state to use leading questions to question Amy. The defendant points to the fact that Amy was sixteen years old at

the time of trial and a junior in high school. Moreover, defendant claims, Amy suffered from no apparent disability at the time of trial that would justify the asking of questions that "suggested the specific tenor of the desired replies." *State v. Mancini,* 108 R.I. 261, 267, 274 A.2d 742, 745 (1971).

■ Although leading questions on direct examination are not generally permitted, a trial justice may exercise his or her discretion in choosing whether to allow leading questions on direct examination. *State v. Girouard,* 561 A.2d 882, 888 (R.I. 1989) (citing *Urbani v. Razza,* 103 R.I. 445, 447, 238 A.2d 383, 385 (1968)). The trial justice will not be overturned by this court unless there is an abuse of discretion or if in our opinion there is danger of substantial injury to the defendant. *Id.* We also permit the use of leading questions when a witness' omission reveals a want of recollection. *Wilson v. New York, New Haven & Hartford Railroad Co.,* 18 R.I. 598, 601, 29 A. 300, 301 (1894).

The defendant cites *Scott v. United States,* 412 A.2d 364 (D.C.Ct.App.1980), as a case in which the appellate court admonished the trial court justice to exercise discretion "judiciously" when allowing leading questions of a juvenile witness. We believe that there is ample evidence in this case to distinguish this case from *Scott.* In that case the witness appeared to be "able and willing to discuss sexual matters without being led by the prosecutor." *Id.* at 371.

■ The instant case involves a young girl who was assaulted many times in several different ways for a period extending to nine years. This record reveals that she forgot to mention certain occurrences. Necessarily the incidents were extracted by use of leading questions. For example, Amy testified that defendant touched her vagina, but she did not realize the legal necessity of establishing that he penetrated her with his hand. This justifiably needed to be elicited with a leading question because of Amy's inability to recognize the import of the question "Where would he touch you?" She was also reluctant to use the term "penis" in relating the necessary facts.

Moreover, the record reveals that Amy was emotionally distraught. She was crying when she was called to the stand. She was so upset that the trial justice directed the jury to leave the courtroom while Amy composed herself. While the jury was absent from the courtroom, the state requested that Amy be permitted to sit while testifying rather than stand as the trial justice preferred, in order to help her to calm down. Amy's display of emotion was so severe that the trial justice felt it necessary to remind the jury that it must decide the case on the facts and not on feelings of sympathy. In making his ruling to allow leading questions, the trial justice stated on the record:

"The record indicates this witness appears to this court to be a terrorized young lady. She almost broke down just giving her name and age. This court feels that in the interest of justice and in exercising discretion, it's going to allow leading questions of this witness."

Under the circumstances we do not believe that the trial justice abused his discretion in allowing leading questions.

■ The defendant further objects to the introduction of Amy's testimony relating to the rubber penis. Prior to the trial defendant requested a bill of particulars that set forth three time periods: (1) June 1, 1979, to May 3, 1984, (2) May 4, 1984, to April 12, 1985, and (3) April 13, 1985, to May 18, 1985. Each time period mentioned three instruments of penetration: (1) fingers, (2) vaginal (penile) intercourse, and (3) banana. The bill of particulars therefore restricted the state to reliance upon the three instrumentalities alleged therein. The trial justice therefore erred by allowing the introduction of evidence beyond the bill of particulars.

Moreover, the admission of the evidence of the rubber penis combined with the trial justice's instructions to the jury constituted error requiring that we vacate the jury verdict. The members of the jury were told that they could convict defendant if

749

they believed that he had committed penetration nine times with any combination of any four instrumentalities the nature of which had been elicited from Amy's testimony. The jury, in attempting to match up the separate offenses, was given little guidance or limitation within the trial justice's instructions.

Although the trial justice allowed the defense to invoke Rule 7(f) of the Superior Court Rules of Criminal Procedure and request a bill of particulars, the trial justice negated the effect of the bill. The jury was free to rely on evidence outside the bill of particulars to each and every one of the nine counts. Every conviction must therefore be vacated and remanded for a new trial. The state should have either amended its bill or realized that it would be bound.

The last issue we address is whether the trial justice correctly allowed the introduction of a pornographic catalog bearing defendant's name on the mailing label. The state had introduced the catalog as a full exhibit during its cross-examination of defendant in order to impeach defendant's denial that he kept magazines "with photographs showing people having sex." Over objection the trial justice allowed its admission.

We have held that "[a] witness may not be impeached on collateral matters by the introduction of extrinsic evidence. The cross-examiner is restricted to the answers of the witness." *State v. Bowden,* 439 A.2d 263, 268 (R.I.1982). Moreover, we do not see the relevance of the pornographic catalog to the factual issue of whether the defendant was guilty of the charges listed in the bill of particulars. The fact that the defendant possessed this catalog does not make the fact that he sexually abused Amy more or less probable. *State v. Wheeler,* 496 A.2d 1382, 1388 (R.I.1985). If the jury were to draw an inference that a defendant who would have a pornographic magazine was the type of person who would sexually abuse children, such an inference would be inappropriate. We therefore shall not allow the admission of this type of evidence which has minimal probative value at best,

as it is unfairly prejudicial to the defendant and capable of misleading the jury. Rhode Island Rules of Evidence 403.

Upon the foregoing analysis and applicable law, the defendant's appeal is granted. The judgment of the Superior Court is hereby vacated. The case is remanded to the Superior Court for a new trial consistent with this opinion.