No. 14,827.

## DREW v. THE STATE.

| 124 | 9 |
|---|---|
| 140 | 166 |
| 124 | 9 |
| 146 | 276 |
| 147 | 134 |
| 124 | 9 |
| 153 | 545 |
| 124 | 9 |
| f167 | 235 |
| 124 | 9 |
| 170 | 214 |

JUROR.—*Misconduct of.—What will Not Constitute.*—Where, after a jury had
retired to deliberate on a verdict, and while they were going to supper
· in the custody of the bailiff, one of the jurors became accidentally sep-
arated from the remainder of the panel, such separation lasting ten or
fifteen minutes, and the affidavit of the juror discloses that during such
separation he spoke to no one but the counsel for the appellant, and no
one did anything to influence his verdict, and that he was in no way
influenced by such separation, and no improper conduct is charged
against the juror except the mere fact of separation, a new trial will
not be granted on the ground of such alleged misconduct.

CRIMINAL LAW.—*Misconduct of Prosecuting Attorney.— When not Ground For
New Trial.*—Where, on the trial of a criminal cause, the prosecuting
attorney made a remark to which the counsel for the defendant ob-
jected, and the court stated that " the statement of the prosecuting at-
torney was improper," and the prosecutor said, " Then I withdraw the
remark," and the court was not asked to make any ruling in respect to
the remark of the prosecuting attorney, there was no error in refusing
to grant a new trial because of the alleged misconduct of the prosecut-
ing attorney in making said statement.

SAME.— *Evidence.—Coroner's Record.—Oral Testimony as to Contents of.—Com-
petency of Not Properly Raised.*—Where a coroner testified orally as to
what a certain witness had stated on the inquest, but no objection was
made at the time to such testimony on the ground that the coroner
was giving oral testimony of the contents of his record made at the in-
quest, no question is presented by the motion for a new trial assigning
such reason as an objection to the competency of the evidence.

SAME.—*Bad Character of Accused.—Evidence as to.— When Competent.*—Where

the defendant in a criminal case testifies in his own behalf, it is competent for the State to introduce evidence as to the general bad moral character of the accused.

SAME.—*Specific Unlawful Acts.*—*Evidence Concerning.*—*When only Admissible.*—In a criminal case, after evidence has been introduced as to the general bad moral character of the accused, it is not competent for the State to prove the defendant's reputation in regard to the commission of a specific unlawful act. Proof can not be introduced by the State of specific traits of character of the defendant, unless the accused first puts such traits of character in issue by the introduction of evidence as to his general reputation in that respect.

From the Tippecanoe Circuit Court.

*W. R. Wood* and *W. C. Wilson,* for appellant.

*L. T. Michener,* Attorney General, *G. P. Haywood,* Prosecuting Attorney, *J. B. Milner,* and *J. H. Gillett,* for the State.

OLDS, J.—The appellant, Daniel Drew, was indicted by the grand jury of Tippecanoe county for the murder of John Mackessy, who was killed on the 3d day of August, 1887. The indictment contains three counts, all charging murder in the first degree.

Appellant made a separate motion to quash each count of the indictment, which motion the court overruled, and the appellant excepted. The appellant was arraigned, and entered a plea of not guilty; a trial was had, and a verdict returned finding the appellant guilty of murder in the second degree, as charged, and that he be imprisoned in the State's prison during life.

Appellant moved the court for a new trial, which motion the court overruled, and the appellant excepted. Judgment on the verdict, and appellant sentenced by the court.

Appellant assigns as errors the overruling of the motion to quash each count of the indictment, and the overruling of the motion for a new trial.

The error assigned on the ruling on the motion to quash the indictment is not discussed, and no question is made as to the sufficiency of the indictment.

The only questions discussed by counsel for appellant arise on the motion for a new trial.

The first question discussed is in regard to the alleged misconduct of David McLaughlin, a juror, in the trial of said cause, such misconduct being assigned as a cause for a new trial.

The facts, as they appear from the affidavits filed in support of the motion and counter-affidavits, are, that after the jury had retired to deliberate on a verdict, at about 7 o'clock in the evening, the bailiff started with the jurors to take the jurors to supper, in a body, and as they stepped out of the jury-room in the court-house, near by a water-closet in the building, a number of the jurors, including McLaughlin, stepped into the water-closet, the bailiff and the other jurors waiting for them to return; within a very few moments they all returned except McLaughlin; the bailiff, supposing all the jurors were present, started with them to supper, a distance of about three squares; immediately after the bailiff and the eleven other jurors had gone out of the court-house McLaughlin came out of the water-closet, and the other jurors being absent he saw one of the counsel for the appellant standing near by and asked him if the other jurors had gone; the counsel replied that he guessed they had; McLaughlin inquired how to get out of the court-house, and the counsel directed him, and the juror went directly to the boarding-house, about three squares distant, where the jurors were to get their supper, arriving there immediately after the other members of the jury had reached the boarding-house, and was not separated from the remainder of the jury to exceed ten to fifteen minutes. The juror swears, in his affidavit, that he spoke to no person except the counsel for appellant, as aforesaid; that he saw no person that he recognized, and no person spoke to him, or did anything by words, signs, or gestures, or in any way, to influence his verdict; and that he was in no way influenced by such separation, or while separated, and no person tampered

with, or attempted to tamper with or influence him, and no improper conduct is charged against the juror except the mere fact that he was separated from the other jurors in the manner aforesaid for a very few moments. It is perfectly evident and certain that the defendant was in no way injured, or his rights prejudiced, by the accidental separation of this juror from the remainder of the panel for the few moments, at a time when the jury were not deliberating.

A defendant, in a criminal case, is not entitled to a new trial on account of the misconduct of a juror, unless it be shown that such misconduct was prejudicial to the rights of the defendant, or such a state of facts is shown from which it may fairly be presumed that the defendant's rights were prejudiced. *Henning* v. *State,* 106 Ind. 386; *Mergentheim* v. *State,* 107 Ind. 567; *Riley* v. *State,* 95 Ind. 446; *Cooper* v. *State,* 120 Ind. 377.

Appellant assigns as a cause for a new trial the misconduct of the prosecuting attorney in the closing argument of the cause. It is shown that the prosecuting attorney, in his closing argument to the jury, said: " Daniel Drew was a common wife beater, and is unworthy of belief," to which statement the appellant, by counsel, at the time objected, and the court stated that " the statement of the prosecuting attorney was improper," and the prosecutor said, " Then I withdraw the remark."

There is no ruling of the court adverse to the appellant. The court was not asked to make any ruling in regard to the remark of the prosecuting attorney. There is no error in not granting a new trial for this cause. *Coleman* v. *State,* 111 Ind. 563; *Grubb* v. *State,* 117 Ind. 277; *Waterman* v. *State,* 116 Ind. 51; *Staser* v. *Hogan,* 120 Ind. 207.

It is contended that the court erred in permitting Dr. W. R. Moffit, the coroner who held an inquest over the body of John Mackessy, the deceased, to testify orally as to what Mrs. Drew testified to at the coroner's inquest, on the ground that it was permitting oral testimony of the coroner's record

made at said inquest. The doctor was called and testified to what Mrs. Drew had testified to at such inquest, but no objection was made at the time to such testimony on the ground that the coroner was giving oral testimony of the contents of his record made at the inquest, and hence no question is presented by the motion for a new trial assigning such reason as an objection to the competency of the evidence.

The appellant testified as a witness in his own behalf, and the State then called witnesses who testified to the general bad moral character of the appellant. To this evidence the appellant objected, and the objection was overruled, and the ruling assigned as a cause for a new trial. This question has heretofore been decided by this court holding such evidence competent. *Keyes* v. *State*, 122 Ind. 527.

When a defendant in a criminal cause testifies as a witness in his own behalf, he is subject to the same rules of examination and impeachment as other witnesses.

One Patrick Lynch was called as a witness on behalf of the State, and testified that he was acquainted with the general moral character of the defendant, and that it was bad. The witness was then cross-examined by counsel for the defendant. On re-examination counsel for the State asked the witness the following question:

"Did you ever hear of him (Drew) beating his wife?" To which question objection was made by the defendant, and the court overruled the objection, and the defendant excepted. The witness answered, " Yes, sir." The ruling of the court is properly assigned as a cause for a new trial.

We have read the evidence in the case, and it is very doubtful whether it supports the verdict of murder in the second degree as found by the jury. The homicide occurred at the defendant's own house. It is contended on the part of the defence that deceased came to the house of the defendant in the evening; that defendant and his wife had been drinking beer during the day and evening; that the deceased

came to the house without invitation, but was welcomed, and he furnished money and sent the defendant after more beer and a bottle of whiskey. After remaining there until a late hour he again furnished money to defendant and sent him after more beer and whiskey, and while he was absent he attempted to outrage the defendant's wife against her will, and while she was in an intoxicated condition, and the defendant returned and caught deceased attempting to outrage his wife, and a fight ensued, in which defendant struck the blow causing the death of the deceased. On the other hand, it is contended by the State that the defendant, his wife and the deceased were at defendant's house engaged in drinking beer and whiskey, and singing, and that defendant attempted to beat his wife, and the deceased interfered, a fight ensued, and defendant struck the blow causing the death of the deceased; that deceased was first knocked down and rendered insensible, and dragged from the house, and afterwards defendant came out of his house and struck the fatal blow.

It is evident from the testimony that defendant and his wife were in the habit of indulging in the use of intoxicating liquors; that they had been doing so on the day and evening of the homicide.

It does not appear that the deceased was an intimate friend of defendant and his wife, but a mere acquaintance, residing in another part of the city; that he had never been at the house of defendant to exceed twice; that some difficulty had occurred between the parties before, relating to a conversation between the deceased and the wife of the defendant, in which defendant claimed the deceased had insulted her, and some controversy had occurred between defendant and deceased about it, but which had been apparently settled. The deceased met the wife of defendant on the street, on the evening of the homicide, about 8 o'clock, going for a bucket of beer. The deceased had been at the saloon, and taken a drink of beer. Immediately after the wife of defendant returned home, deceased came to the house of the defendant.

Soon afterwards defendant went to the saloon and purchased a bucket of beer and a bottle of whiskey, also drank a glass of beer, and returned to his house again. It is evident from the testimony that the deceased knew the defendant and his wife had been drinking, or at least that the wife was taking home beer.

There is no reason disclosed by the evidence for the deceased going to the house of defendant upon this occasion. From the testimony of police officers and neighbors everything remained quiet about the house until a late hour at night, when the fight took place, resulting in the death of the deceased about eleven or twelve o'clock at night. No witness was present at the house during the evening except defendant and his wife, and no other witness pretends to testify as to the origin of the trouble; both defendant and his wife testify that the origin of it was an attempt on the part of the deceased to have sexual intercourse with the wife by force. The wife was dealt a severe blow, and was severely injured at the time of the homicide. There is evidence to the effect that the wife made statements at different times about the time of the homicide, at the coroner's inquest and other times before the trial, contrary to her testimony in court; that she stated that deceased did not attempt to commit an outrage upon her, and that he was not that kind of a man, and that after she drank the liquor she was so drunk she did not know what occurred.

Numerous witnesses testified as to the defendant's bad moral character, but such testimony was all to the effect that he would get drunk, and that he was abusive to his wife.

The defendant, after the homicide, and before it was discovered, left the house and went into another part of the city, and came back about three o'clock in the morning, within three or four hours from the time of the altercation, and was arrested by a police officer. One of the first statements he made was that he was coming back to finish them, referring to both his wife and the deceased, and that the

cause of the altercation was the attempt of the deceased to take advantage of a drunken woman. At the time the defendant made these statements he was not aware that Mackessy's injury was fatal.

There are facts in the case in addition to the testimony of the defendant and his wife tending to support the theory that the altercation was brought about and produced by an attempt on the part of the deceased to outrage the wife of the defendant, or on account of an insult to her, and that all that occurred took place on the spur of the moment, in the heat of passion, without malice, and voluntarily upon a sudden heat, making the crime no greater than voluntary manslaughter.

While, upon the other hand, if the evidence of the defendant and his wife is cast out of the case, and the statements of the wife made out of court explanatory of the cause which produced the altercation are to be taken as stating the true cause, the defendant is guilty of murder. But the statements of the wife are only competent to be given in evidence for the purpose of impeaching her, and are not competent as affirmative evidence against the defendant. The defendant can not be prejudiced by statements made by his wife to third parties, in his absence, after the homicide. This is, no doubt, the theory the jury took of the case, and there being evidence tending to support that theory this court will not reverse the case on the evidence; but the evidence presents such a case that the court can not say, after looking into the evidence, that improper evidence introduced in relation to the defendant beating his wife may not have influenced the jury in arriving at the conclusion they did, and that the evidence, although erroneously admitted, was harmless, and did not tend to influence a verdict finding the defendant guilty of murder. So that, if the ruling of the court in admitting such evidence is erroneous, the judgment must be reversed; and it appears that the fact that defendant had, before that time, been cruel to his wife, was given considera-

ble prominence in the trial ; the prosecuting attorney, commenting upon it in argument, although the wife testified that the injury she received at the time of the homicide was received by the defendant pushing her, and that she fell upon the stove, though it appears she had made contrary statements about it.

It is a well-recognized legal principle that a witness can not be impeached by proof of specific acts of immorality, nor can proof be introduced by the State of special traits of character of the defendant in a criminal case, unless the defendant first puts such traits of character in issue by the introduction of evidence as to his general good character in that respect. *Stitz* v. *State*, 104 Ind. 359 ; *McDonel* v. *State*, 90 Ind. 320 ; *Robinson* v. *State*, 84 Ind. 452 ; *Walker* v. *State*, 102 Ind. 502 ; *State* v. *Bloom*, 68 Ind. 54 (34 Am. Rep. ·247); *Fletcher* v. *State*, 49 Ind. 124 ; 3 Am. & Eng. Encyc. of Law, p. 110.

The case of *Robinson* v. *State*, *supra*, involved a question quite similar to the one under consideration. The defendant had testified in his own behalf, and the State, at the proper time, for the purpose of impeaching the defendant as a witness, called a witness and proved by the witness that he was acquainted with the defendant's general moral character, and that it was bad. The defendant's counsel cross-examined the witness, asking the question : " The defendant has the reputation of being a drinking, swearing man, has he not?" The witness answered : " He has." On re-examination, the State asked the witness the following question : " What is the defendant's reputation for honesty ?" The defendant objected, and the court overruled the objection, and the witness answered, it was bad. On appeal, this court held that the evidence was improper, and that the court erred in admitting it.

The evidence admitted in this case was clearly incompetent. It was permitting the State to prove the defendant's

reputation in regard to the commission of a specific unlawful act, and the court erred in overruling the defendant's objection to the question; and in view of the fact that the evidence is of such a character that this court can not say the jury were not influenced by such evidence in returning the verdict of guilty of murder in the second degree, the judgment must be reversed. If the evidence was of such a character that it manifestly appeared that the defendant was not injured by such evidence, then it might be proper to affirm the judgment, notwithstanding such error; but it does not so appear to the court.

Judgment reversed, and cause remanded for a new trial.

The clerk will give the proper notice for the return of the prisoner.

Filed April 5, 1890; petition for a rehearing overruled May 15, 1890.