STATE *vs.* RICHARD W. FARR.

MARCH 20, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Forgery.*

Upon an indictment for forgery, evidence considered and held to sustain the verdict.

(2) *Evidence.*

Conduct of the defendant in a criminal case, indicative of his consciousness
of guilt or of his doubt in the merits of his defence, is admissible in evi-
dence.

(3) *Exceptions to Remarks of Counsel.*

Exception to language used by counsel will not lie under C. P. A., § 482.
*Semble:* where a party has first requested the court to instruct the jury to
disregard remarks of counsel, on refusal, an exception to such refusal
would lie.

INDICTMENT for forgery, on facts stated in opinion. Heard
on exceptions of defendant, and overruled.

DUBOIS, J. This is an indictment which charges the de-
fendant with forging and uttering an assignment of wages.
After a verdict of guilty, the defendant filed his motion for a
new trial in the Superior Court, upon the ground that the
verdict was against the law and the evidence. After denial
of said motion, the defendant prosecuted before this court his
bill of exceptions based upon the refusal of the Superior Court
to grant him a new trial, and also upon certain alleged errors
of the court made during the progress of the trial, to which
exceptions had been duly allowed.

The testimony discloses the fact that on the twenty-sixth
day of June, 1903, one Charles F. Fry, for many years an
employee of the Gorham Manufacturing Company, borrowed
ten dollars from the defendant and gave him therefor the
following note:

"26 June 1903.

" On demand for value received I promise to pay Mrs. A.
Ling or order ten dollars with interest at the rate of ten per
cent. per month payable monthly in advance till said principal
sum is paid whether at or after maturity and all installments
of interest in arrear whether before or after maturity to bear
interest at the rate aforesaid till paid.

" CHARLES F. FRY,

" Prov. R. I."

At the same time and as security for the loan, Fry signed an assignment of wages, as he testified, in blank; this statement, however, is denied by the defendant, who swore that the assignment was filled out at the time. The assignment of wages set out in the indictment as the one forged and uttered by the defendant, and which was introduced in evidence, consists of a printed form published and sold by a firm of stationers, which was filled out by the defendant, signed by Charles F. Fry, and witnessed by Alice Farr.

The contention of the State is that the assignment of wages was filled out by the defendant, long after the payment of the indebtedness for the security of which it was given, and for the purpose of using the same as security for the payment of another loan made by the defendant to one Rushlow for which said Rushlow had given his promissory note endorsed by said Fry, and secured by Fry's assignment of wages dated July 29th, 1903, and to run between that date and the thirtieth day of May, 1906. The defendant testified and offered testimony tending to prove that the assignment of wages in dispute, which is dated May 26, 1906, was executed at his place of business by Fry on that day between the hours of twelve and one o'clock in the afternoon. And said Fry testified and offered evidence tending to prove that at that time he was elsewhere and could not have so executed the same. It was therefore a question of fact, and purely within the province of the jury to determine.

In addition to the foregoing there were certain other circumstances that may have aided the jury in their inquiry after the truth. It appears that the defendant for some time prior to the alleged execution of the assignment of wages had been dunning Fry by letter, and that the series of monitions culminated in the following epistle:

"MR. FRY

" The interest due from Mr. Rushlow for March April and May has not been paid. This interest is guaranteed by you. Unless said interest is paid at once I will place on record the assignment of wages held by me from you and then serve said assign-

ment on your employers. I am finished with letter writing. What I want is the money. It is now up to you.

" This is my last word.

" R. W. FARR.

" 24 May 1906."

His object in writing appears in his answer to the following question: "Q. 226. Was that why you were trying through all these letters and interviews to get another assignment? A. Sure." Having, according to his testimony, and that of the witnesses in his behalf, obtained the assignment of wages that he was trying to get, he wrote the following letter to the employer of Charles F. Fry:

"THE GORHAM MFG. CO.

" *Silversmiths*

" *Elmwood.   Providence, R. I.*

" DEAR SIRS:

" Enclosed is assignment of wages from Charles F. Fry who indorsed notes for Fred Rushlow the latter omitting to settle before his departure for Canada or since his arrival there. Mr. Fry guaranteed the payment of said notes (principal and interest) but now he ignores the matter. I have exhausted all peaceable means of inducing Mr. Fry to perform his part and am reluctantly compelled to serve this assignment of wages with his employers.

" Respectfully

" R. W. FARR.

" 5. June. 1906."

The defendant further testified as follows: "Q. You testified in the lower court in the suit of Mrs. Alicia Ling against Charles F. Fry, on the Rushlow note, you testified, did you not, in court? A. I certainly did. Q. You were shown the assignment of wages you have before you dated May 26th, 1906? A. I was. Q. And that was the only assignment of wages shown you that day, was it not? A. It was. Q. This

assignment was not used at that time? A. No. Q. I will ask you if you did not testify as follows? 'Q. Now, Mr. Farr, will you kindly state why on May 26th, .1906, Charles F. Fry, owing you nothing personally, you filled up an assignment of wages which you had taken from him a year ago or more previously, making it out to yourself, Richard W. Farr? A. Why I did so? Q. Yes. A. Because I did. Q. Do you know of any reason why you did? A. There must have been a reason, necessity for it, I suppose.' Then the question was asked, 'The necessity was to try to collect on your indorse-. ment, was it not? A. Probably so, yes.' Did you so testify in the district court? A. I couldn't say."

Sophia Topham, a stenographer, testified that she was present at the trial of the case of *Alicia Ling* v. *Charles F. Fry,* in the District Court, and took notes of the testimony of Richard W. Farr; that among other things he testified as follows: "Q. Now, Mr. Farr, will you kindly state why May 26, 1906, Charles F. Fry, owing you nothing personally, you filled up an assignment of wages which you had taken from him a year or more previously making it out to yourself, Richard W. Farr? A. Why I did so? Q. Yes. A. Because I did. Q. You don't know of any other reason why you did? A. There must have been a reason, a necessity for it I suppose. Q. The necessity was to try to collect on this endorsement was it not? A. Probably so, yes."

In addition to this, two witnesses, Wilfred Chadwick and Jacob Knabel, testified that the defendant said to them together, at his house, on the twentieth day of December: "If you can make it your way, either of you, to see Charles Fry on the quiet and keep it to yourselves and can get Charles Fry to come to my house on the quiet and settle this case out. of court, I will settle good with Charles and you lose nothing by it." Jacob Knabel also testified: "Q. 15. Did Mr. Farr tell you during that interview he would make it of interest to you and Mr. Chadwick if you could induce Mr. Charles F. Fry to drop the criminal proceedings which were about to be instituted or were instituted against him at that time? A. Yes, sir."

The verdict is supported by the evidence.

The first exception taken by the defendant was to the ruling of the court excluding the defendant from answering the following question of his counsel in direct examination: "Q. 67. I will ask you in relation to Mr. Lawton as to what conversation you had with him or correspondence or interviews in relation to his objecting to your charging men in his employ?" The pertinency of the question is not apparent, and the exception was not pressed before this court. The exception is therefore overruled.

The second exception was to the admission by the court, against the defendant's objection, of the following question, propounded by the assistant attorney general, to the defendant in cross-examination: "Q. 196. In your business of loaning money and getting assignments, is it not your custom to take an assignment of wages in blank?" The answer to the question was: "No," and the next question and answer were: "Q. 197. Didn't you ever get them signed in blank? A. I have." Whether the above question asked in cross-examination was fairly within the limits of such examination depends in some degree upon the scope of the direct examination. In his direct examination the defendant made answer to this question of his counsel: "Q. 16. At either of the times Mr. Fry came to see you in 1903 as to these loans, was there any, as to his own personal loans, was there any security given for these loans?" in the following language: "A. No tangible security; he gave me an assignment of his wages every time he got a loan. It is an invariable custom which I practice." We can not say that the judge in permitting the question to be asked exceeded the judicial discretion reposed in him, or that the defendant was injured by such ruling. The exception is therefore overruled.

The third exception also relates to questions asked of the defendant in cross-examination by the assistant attorney general, as follows: "Q. 248. Did you not ask them in the course of that conversation to go and see Fry and see if they could not influence him to drop his interest in the case which was pending against you?" and "Q. 256. Did you not in

that interview tell Mr. Chadwick and Mr. Knabel you would pay them well for their trouble, and pay Fry well if they could (2) influence him to drop his interest in that criminal complaint?" It was perfectly proper to permit the questions to be asked, although the same were unnecessary as a foundation for the introduction of testimony by the witnesses referred to. Conduct of the defendant in a criminal case indicative of his consciousness of guilt or of his doubt in the merits of his defence is admissible in evidence. 12 Cyc. 394, h. and 398 (E) and cases cited.

The fourth exception arose in the manner following: One Bernard Lang, a witness introduced by the State, had testified that the reputation for truth and veracity of one of the witnesses for the defendant was bad; he was then asked in cross-examination, by the counsel for the defendant, the following question: "He has been unfortunate and couldn't pay his debts one while, that is a fact? A. Yes, sir." The witness further stated: "If he wanted to pay an honest man he could pay his debts." "Q." · (By the assistant attorney general) "I am asking in regard to Mr. Sisson? A. I spoke of Mr. Sisson. Q. I asked you why? A. Because he can work right straight along, and what he earned he used to put that money in gambling, that is the way the money went. MR. BASSETT: It is futile to say the attorney general didn't know what he wanted to get in all the time and he has got in the case what he had no right to get in. THE COURT: You may have an exception."

The exception is without merit.

The question asked in cross-examination was immaterial. Reputation for truth and veracity does not depend upon such a circumstance. As the defendant insisted upon making the inquiry, the State had the right to ascertain the nature of the misfortune referred to.

The Superior Court also allowed the defendant's exception to the following remarks, made by the assistant attorney general in his argument to the jury: "Mr Farr reduced an obligation to himself from the witness Sisson of $25 bearing interest at 20 per cent. per month, on which $100 at least

in interest was due, to one of $25 with interest at 6 per cent. per annum within about fourteen days after the hearing in the District Court of the original complaint. Mr. Farr got his *quid pro quo* when Mr. Sisson gave his testimony on the stand."

(3)    The question whether the conclusion drawn by the attorney for the State was a justifiable inference from the evidence as stated by him, or whether the remarks so made were proper or improper in the circumstances, does not arise. The defendant attempts to bring the matter to our attention upon exception, an exception taken, not to any "ruling, direction or decision of the superior court upon any matter of law" under the provisions of C. P. A., § 482, but to the conduct of the prosecuting attorney during the trial in said court. The statute provides no such remedy. The Superior Court had full authority to control the conduct of the parties, witnesses, and counsel during the trial of the case. While errors of the court are the proper subject of exception, it is not suggested in this connection that the court was requested to do anything more than to allow the exception now being considered. This is clearly insufficient. The defendant should first have requested the court to instruct the jury to disregard the remarks. If he had done this and the court had refused, an exception to such refusal would have raised the question. If the court had complied with the request the incident would have been closed, for it is to be presumed that the jury would have obeyed the instructions of the court. 12 Cyc. 585, c; *Com.* v. *Worcester*, 141 Mass. 58; *Drew* v. *State*, 124 Ind. 9; *Ethridge* v. *State*, 124 Ala. 106; *Brow* v. *State*, 103 Ind. 133; *State* v. *Regan*, 8 Wash. 506; *Wilson* v. *United States*, 149 U. S. 60.

For the foregoing reasons the defendant's exceptions are overruled, and the case is remitted to the Superior Court for sentence.

*William B. Greenough, Attorney General*, for State. *James C. Collins, Jr.*, of counsel.

*Bassett & Raymond*, for defendant. *Russell W. Richmond*, of counsel.