STATE

v.

**Armando MERCED.**

No. 2006–262–C.A.

Supreme Court of Rhode Island.

Oct. 25, 2007.

Jane M. McSoley, Providence, for Plaintiff.

Ronald L. Bonin, Cranston, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, Armando Merced (defendant), appeals from a Superior Court judgment of conviction on one count of first-degree child molestation sexual assault, in violation of G.L.1956 §§ 11–37–8.1 and 11–37–8.2, and two counts of second-degree child molestation sexual assault, in violation of §§ 11–37–8.3 and 11–37–8.4. This case came before the Supreme Court for oral argument on September 25, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The defendant was convicted of first- and second-degree child molestation

against Molly,[1] his then ten-year-old granddaughter, after a jury trial in Providence County Superior Court. At trial Molly alleged that defendant's abusive conduct toward her increased over a period spanning a little more than one month in the spring of 2004. Because Molly was unable to walk to school due to a leg injury, defendant, who did not live with her, began driving her to school. It was during these rides that Molly alleges defendant first "tried to touch" her. In all, Molly testified that there were about fifteen such incidents in April 2004.

Molly testified that at the end of April 2004, the month-long pattern of abuse by defendant culminated in the most serious instance of abuse. Molly arrived at home on the day of the incident to find herself alone, and decided to go across the street to buy a soda. According to her testimony, her grandfather grabbed her on the way to the market and took her into her sister's house. Molly testified that once they were inside the house, her grandfather held her down on a bed and "took out his private and tried to put it on my butt." Later, she testified that her grandfather's private "[w]ent in the butt." Molly also testified that, before she could leave, "he had threatened that if I had told anyone, that he would kill my mom and my sister." She testified that defendant continued touching her in the car for a period thereafter, but that she was not sure how many times or for how long. Finally, on Mother's Day of 2004, Molly told her mother and sister that she had been molested by her grandfather.

In addition to Molly's testimony, testimony was elicited at trial from Molly's sister and Christine Barron, M.D. (Dr. Barron), the doctor who treated her at

[1]. Molly is not the victim's real name.

Hasboro Children's Hospital. Doctor Barron testified that she examined Molly and took an extensive history in May 2004. Doctor Barron testified without objection that her conclusion after the examination was that "Molly was a ten-year-old who displayed a very clear disclosure of sexual abuse."

The defendant chose not to present a case. At the close of the state's testimony defendant's motion for judgment of acquittal was denied, though the state agreed to reduce the second count concerning digital anal penetration from first- to second-degree child molestation. The first count remained first-degree child molestation. On December 1, 2005, after deliberating for a little more than two hours, a jury returned a verdict of guilty on all three counts. The defendant was sentenced to twenty years imprisonment, with fifteen to serve on the count of first-degree child molestation and ten years, with eight to serve on both counts of second-degree child molestation. All sentences were to run concurrently. The defendant timely appealed to this Court.

## II

### Analysis

On appeal, defendant alleges two errors. First, he alleges that the trial justice erred by allowing certain testimony of Dr. Barron that he claims improperly bolstered Molly's testimony. Second, he alleges that the trial justice abused her discretion by allowing the state to ask Molly a number of leading questions during redirect examination regarding whether penetration occurred. We address each issue in turn.

### A

#### Improper Bolstering

■ In response to defendant's argument that the trial justice erred by allowing Dr. Barron to give improper bolstering testimony, the state asserts that defendant's failure to object to this testimony at trial waived the issue on appeal.

■ "[A]llegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." *State v. Toole*, 640 A.2d 965, 973 (R.I.1994). In other words, alleged errors "not specifically objected to at trial-that is, by an objection that is 'sufficiently focused so as to call the trial justice's attention to the basis for said objection'—are not preserved for consideration by this court on appeal." *State v. Brown*, 709 A.2d 465, 477 (R.I. 1998) (quoting *Toole*, 640 A.2d at 972); *see also State v. Farr*, 29 R.I. 72, 79, 69 A. 5, 8 (1908). Our thorough examination of the record reveals that the defense did not object to Dr. Barron's testimony on grounds that it was improper bolstering. We therefore conclude that defendant's argument on this issue is not properly before this Court. *See Brown*, 709 A.2d at 477.[2]

### B

#### Leading Questions

■ The defendant next argues that the trial justice abused her discretion by allowing the state to ask a short series of

---

**2.** In any case, defendant did not direct this Court to language in the record that would support his bolstering accusation. "A witness's opinion about the truth of the testimony of another witness is not permitted." *State v. James*, 557 A.2d 471, 473 (R.I.1989). Doctor Barron testified that her examination of Molly was normal and that "a normal exam neither rules out, nor confirms the possibility of sexual abuse or prior penetration." This testimony was expert testimony on an ultimate issue in the case that we would not have held to be bolstering.

leading questions on redirect examination about whether anal penetration occurred during the incident in Molly's sister's apartment.[3] The defendant argues that this series of questions elicited an inconsistent response that the prosecution should not have been allowed to use in its case-in-chief.

 "Although a trial justice must act judiciously when making rulings during examination of witnesses at trial, the justice is afforded considerable latitude, and we review such rulings with deference, overturning them only when there has been an abuse of discretion or substantial injury to a defendant." *State v. Boillard*, 789 A.2d 881, 886 (R.I.2002). Furthermore, we will consider the entire colloquy and the full context of the state's examination in making our determination. *Id.* at 886–87.

 A leading question is one that suggests the desired answer. *Boillard*, 789 A.2d at 887. While leading questions are generally disallowed during direct examination because such questions may elicit the desired response "irrespective of actual memory," *State v. Girouard*, 561 A.2d 882, 888 (R.I.1989), they may be allowed for a number of limited purposes, including "guiding the testimony * * * of an emotionally distraught juvenile witness reluctant to relate the necessary facts."

*Boillard* 789 A.2d at 887 (citing *State v. Brown*, 574 A.2d 745, 748 (R.I.1990)).

In *Brown*, for instance, this Court affirmed the use of leading questions on direct examination of a sexual-assault victim who was emotionally upset and unable to grasp the legal significance of penetration. *See Brown*, 574 A.2d at 748. Similarly, in *Boillard*, we affirmed the state's use of leading questions on direct examination of a sixteen-year-old boy who was reluctant to discuss the details of his molestation. *Boillard*, 789 A.2d at 887. Finally, in a case similar to the one at bar, this Court held that the state could use leading questions on direct examination of an eleven-year-old victim of molestation because "her tender age, coupled with the apparent difficulty she had in understanding questions, justified the use of leading questions on direct examination." *State v. Vanasse*, 593 A.2d 58, 68 (R.I.1991).

In this case, Molly, eleven years old at the time of trial, was asked to recount a series of events from more than a year earlier for the purpose of establishing whether defendant's conduct satisfied an element of first-degree child molestation. The record suggests that this child had difficulty grasping the legal significance of penetration and that she was reluctant to recount the events surrounding her moles-

---

3. The exchange that defendant takes exception to is as follows:

"Q: Okay. When you say 'it went in a little bit into your-into your back private,' what exactly did it go in? What do you
"A: Like it went in the—
"Q: Went in what?
"A: Went in the butt.
"Q: It went in the butt?
"A: Yes.
"Q: Now, the butt has a crack, is that right?
"A: Yes.
"Q: And then inside the crack, that little bit of a hole?
"A: Yes.

"Q: When you say 'it went in the butt,' when you said that to Detective Stonely and what your memory is now, all right-did it go in the crack or did it go into the—
"Mr. Lovoy: Objection.
"Mr. Prior: Can I finish the question?
"The Court: Yes.
"Mr. Lovoy: Judge, no matter how he is going to finish, it is going to be leading.
"The Court: Sustained as to form.
"Q: What did it go—in the crack or the opening?
"A: The opening.
"Q: The opening?
"A: Yes."

tation. Just as in *Boillard*, the questions in this case were "used to direct [the witness's] testimony to the desired topics and incidents, not to suggest the tenor of the desired reply." *Boillard*, 789 A.2d at 887. As our discussion above makes abundantly clear, this scenario is well within the range of those in which a trial justice has discretion to permit the use of leading questions on direct examination.

Furthermore, we perceive no substantial injury to the defendant. Contrary to the defendant's assertions, Molly's testimony suggests confusion about what was being asked, rather than inconsistency. Molly first testified about a statement she made to police in which she said that anal penetration had occurred. The record suggests that confusion and uncertainty arose later during her cross-examination about the relevant anatomy and whether and where penetration had occurred.[4] The state initially suggested use of anatomically correct dolls to clear up confusion, but the trial justice was concerned that this might confuse the jury. In the end, the trial justice allowed the state to conduct redirect examination in the hope of clarifying whether and where penetration had occurred. The use of leading questions in this limited context to clarify the already existing record did not substantially injure the defendant. *See Girouard*, 561 A.2d at 888–89 (no substantial injury when leading questions were used to reiterate facts already in evidence). We therefore conclude that the defendant was not substantially injured by the trial justice's decision to allow the use of leading questions on redirect examination. Consequently, the trial justice acted within her considerable latitude and this Court will not disturb her ruling.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

---

**4.** The trial justice suggested as much: "[I]n affirming her police statement what she said is it went in a little bit, but we don't know what it went in. That is not clear to me from the state of the record."