DECISION
This is an appeal of a decision issued by the Retirement Board of the Employees' Retirement System of Rhode Island (ERSRI), dated March 15, 2007, which denied Fred Worley's application for an accidental disability pension. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The record reveals that Fred Worley (Worley) began his employment with the State of Rhode Island Department of Corrections in 1990 as a correctional officer working in the Adult Correctional Institutions (ACI). Sometime in 1999, Worley suffered significant injuries in a non-work-related motor vehicle accident. To regain his ability to perform daily activities, Worley required approximately one month of hospitalization and ten months of physical therapy. Despite some progress, Worley experienced lingering discomfort in his back and numbness in *Page 2 
his legs, which precipitated his decision to have surgery in December 2003. After a five-week recovery period, Worley returned to work at the ACI in January 2004.
As a regular part of his duties on April 12, 2004, Worley supervised a group of inmates who were using a wood chipper and cutting down trees in a high security area of the ACI. Worley reported that he moved a large tree limb, sized between ten and thirteen feet long and seven or eight inches in diameter, out of the road as a safety precaution. Upon moving the limb, Worley heard a "pop" and immediately suffered back spasms. He was transported to the emergency room at the Garden City Treatment Center where he was examined, treated, and released. Since this incident, Worley has not returned to work.
On May 26, 2005, he filed an application for accidental disability retirement with ERSRI.[1] In support of his application, Worley submitted a statement by his physician, Richard L. Cervone, M.D., on a standard ERSRI form entitled "Applicant's Physician's Statement for Disability." Doctor Cervone indicated that Worley had been under his care since April 15, 2004, and opined that Worley was totally disabled from performing his job duties as a result of the April 12, 2004 incident. Subsequently, Worley visited four independent physicians engaged by ERSRI. The details of these examinations will be discussed as necessary below.
After reviewing Worley's submissions and the medical reports provided by the physicians, the ERSRI Disability Subcommittee (the Subcommittee) denied Worley's application in a written decision dated February 3, 2006. The Subcommittee determined that Worley indeed *Page 3 
was disabled, but that his disability did not result from lifting and moving a tree limb at the ACI on April 12, 2004.
On September 26, 2006, the Subcommittee afforded Worley a hearing to appeal its initial denial of his application. However, it reaffirmed its prior action in writing the next day. As a final step in exhausting his administrative remedies, Worley appealed the Subcommittee's decision to the full board of the ERSRI (the Retirement Board), which held a February 14, 2007 hearing on his application. In a written decision dated March 15, 2007, the Retirement Board formally affirmed its Subcommittee's denial of accidental disability benefits. Unsatisfied with the Retirement Board's decision, Worely timely appealed its decision to this Court.
 II Standard of Review
The Superior Court's review of a decision rendered by the Retirement Board is governed by § 42-35-15 of the Administrative Procedures Act (APA). Subsection (g) provides as follows:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error o[f] law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision under the APA, the Court is limited to examining the certified record to determine whether the agency's decision is supported by legally competent evidence. R.I. Pub. Telecomm.Auth. v. R.I. State of Labor Relations Bd., 650 A.2d 479, 485 *Page 4 
(R.I. 1994); Barrington Sch. Comm. v. R.I. State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992). Legally competent evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." R.I. Temps. v. Dep't ofLabor Training, 749 A.2d 1121, 1125 (R.I. 2000) (quoting NewportShipyard, Inc. v. R.I. Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984)). The trial judge may reverse the findings of the agency "only in instances wherein the conclusions and the findings of fact are `totally devoid of competent evidentiary support in the record,' or from the reasonable inferences that might be drawn from such evidence."Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations omitted).
Questions of law, however, are not binding upon the Court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of Interest Comm., 509 A.2d 453, 458
(R.I. 1986) (citing Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977)). Additionally, the trial justice may remand a case to the agency for further proceedings. See § 42-35-15(g). Such an action is "intended as a safety valve, permitting the reviewing court to require a second look at situations and conditions which might not warrant reversal, but which, to the court reviewing the record, would indicate to it that the . . . [agency] may have acted on incomplete or inadequate information. . . ." Lemoine v. Dep't of Mental Health,Retardation, Hospitals, 113 R.I. 285, 291, 320 A.2d 611, 615 (1974) (quoting State ex rel. Gunstone v. State Highway Comm'n, 434 P.2d 734,735 (1967)).
 III Analysis
Pursuant to G.L. 1956 § 36-10-14, an employee can apply for and receive an accidental disability pension upon meeting certain conditions. In pertinent part, that section provides as follows: *Page 5 
 "Retirement for accidental disability (a) Medical examination of an active member for accidental disability, and investigation of all statements and certificates by him or her in his or her behalf in connection therewith, shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired.
 (b) The application shall be made within five (5) years of the alleged incident from which the injury has resulted in the members present disability and shall be accompanied by an accident report and a physicians report certifying to the disability; provided that if the member was able to return to his or her employment and subsequently reinjures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the reinjury or aggravation.
 (c) If a medical examination conducted by three (3) physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit." Section 36-10-14 (emphasis added).
On appeal, Worley contends that the Retirement Board erred in finding that no causal connection existed between the April 12, 2004 incident and his disability. He argues that two of the medical opinions received by the Retirement Board pursuant to § 36-10-14 should have been discounted based on the physicians' failure to state that their opinions were given to a reasonable degree of medical certainty. Worley also faults the Retirement Board for considering the opinions rendered by independent examining physicians who had allegedly failed to review a *Page 6 
report prepared by his surgeon, Dr. Phillip Lucas, M.D., eleven days prior to the April 12, 2004 incident.
The Retirement Board counters that Worley failed to object to its reliance on certain medical reports when he appeared before it for a hearing on his application and, therefore, has waived his right to do so before the Court. Next, the Retirement Board asserts that Worley failed to satisfy the statute's multi-pronged test which sets forth the prerequisites to receiving an accidental disability pension. Ultimately, it contends, Worley failed to meet his burden of demonstrating that his disability was the direct result of injuries suffered when he lifted a branch while on duty on April 12, 2004.
Rhode Island courts utilize a well-established raise-or-waive rule when reviewing issues on appeal. See State v. Merced, 933 A.2d 172, 174
(R.I. 2007). The doctrine provides that "[a]llegations of error committed [below] are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level."Id. (quoting State v. Toole, 640 A.2d 965, 973 (R.I. 1994)). Although our Supreme Court has "not explicitly held that the raise-or-waive doctrine applies to administrative proceedings," E. Bay Cmty. Dev. Corp.v. Zoning Bd. of Review, 901 A.2d 1136, 1153 (R.I. 2006), the policy rationale for this rule is nonetheless relevant to the Superior Court's review of agency decisions.[2] If an objection is raised at an early point in an administrative proceeding, the opposing party — or, the agency, as it may be — will be afforded an opportunity to respond to any objections raised, thereby encouraging the fair and efficient resolution of disputes. Id.; see also State v. Burke, 522 A.2d 725, 731 (R.I. 1987). *Page 7 
Therefore, it is axiomatic that "[a] party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal." Montecalvo v. Mandarelli, 682 A.2d 918, 926 (R.I. 1996).
A review of the Subcommittee's hearing transcript of September 27, 2006, indicates that Worley did not argue that the reports rendered by Dr. Morgan and Dr. Buonanno were problematic because neither opinion had been given "to a reasonable degree of medical certainty." In addition, it does not appear that Worley raised this issue at a later hearing before the Retirement Board. Given the fact that Worley already has had the opportunity to raise these legal objections before both the Subcommittee and the Retirement Board, this Court concludes that he has waived his argument that the agency boards erroneously considered the independent medical opinions of Doctors Morgan and Buonanno.
Even assuming, arguendo, that Worley properly raised this argument before the agency, the Court finds it to be unconvincing. Section 36-14-10(c) governs the requisite evidentiary showing an applicant must make to ERSRI before it may award a disability pension. That section states that when a physician finds that the applicant suffers from an accidental disability, he or she must "certify" those findings to ERSRI. It, however, does not require that physicians charged with examining an applicant state in their reports to ERSRI that they have reached their conclusions "to a reasonable degree of medical certainty."
The verb "certify" means "[t]o authenticate or verify in writing" or "[t]o attest as being true or as meeting certain criteria."See Black's Law Dictionary 241 (8th ed.). The physician is asked to provide this certification using a standard "Independent Medical Examination" (IME) form, and must attach statements concerning the applicant's condition. Plainly, if a physician cannot positively state that an applicant suffers from an accidental disability, he or she, therefore, *Page 8 
may not "certify" that fact to ERSRI. As a result of this statutory requirement, an inherent degree of positiveness already exists in the opinion rendered by the physician conducting the IME.
Moreover, just as it is illogical to require a medical expert appearing at trial to utter "magic words" in an effort to verify "some degree of positiveness or probability and not possibility" in his or her opinion, it would be absurd to discount the result of an IME based on a similar lack of the phrase "to a reasonable degree of medical certainty." See Morra v. Harrop, 791 A.2d 472, 477 (R.I. 2002) (recognizing expert witnesses commonly, whether implicitly or explicitly, exclude conclusions other than the one reached by themselves). Doctors Morgan and Buonanno indicated that Worley did not suffer from an accidental disability by checking the "no" box on the standard IME form when asked if his disability might be the natural and proximate result of an accident sustained in the performance of the his duties. Even if both doctors had not checked this box, each stated in direct and unequivocal language in their written commentary that Worley was not disabled as a result of the April 12, 2004 incident. Consequently, the Subcommittee and Retirement Board could have concluded the converse — that the doctors could not state "to a reasonable degree of medical certainty" that Worley was disabled as a result of an accident at work.
Worley additionally complains that the doctors' IME reports were not reliable because they failed to take into account the most recent notes made by his surgeon, Dr. Phillip R. Lucas, M.D., regarding his condition a short time before the April 12, 2004 accident.[3] For discussion *Page 9 
purposes only, as Worley did not raise this concern during the administrative process, the Court also finds this argument to be without merit. In forming an opinion on a patient's condition, doctors are permitted to rely on information customarily relied upon by other experts in their particular field when asked to perform similar tasks.Shayer v. Bohan, 708 A.2d 158, 163 (R.I. 1998) (describing Rhode Island Rule of Evidence 703). This information might consist of the patient's statements, the doctor's own physical examination of the patient, or prior medical records. Furthermore, just as a jury may accept or reject an expert witness' testimony at trial, a state board may accept or reject an expert's report during an administrative proceeding.See Morra, 791 A.2d at 477 (commenting that a jury may "accept or reject expert testimony in whole or in part or to accord it what probative value the jury deems appropriate"). The hearing officer is entrusted "with both the ability to exercise prudence in considering evidence and the reliability that must condition its admissibility." DePasquale v.Harrington, 599 A.2d 314, 317 (R.I. 1991); see alsoFoster-Glocester Reg'l Sch. Comm. v. Bd. of Review, 854 A.2d 1008, 1019
(recognizing hearsay may be considered by administrative tribunals).
While it appears that the independent physicians did not have copies of Dr. Lucas' most recent notes, the record reveals that they were made aware of Worley's treatment with Dr. Lucas when they explored his medical history. Merely because the independent physicians do not cite to Dr. Lucas' notes, that is not to say that they did not take them into consideration when rendering their own opinions. Furthermore, Dr. Lucas' recent notes regarding Worley's condition were read into the record during the Subcommittee's hearing. Those notes were also presented by Worley's attorney to the Retirement Board at its hearing on this matter. Both the *Page 10 
Subcommittee and Retirement Board were, therefore, aware that this additional commentary existed. In examining the other physicians' IME reports, the Retirement Board was able to view the information each physician considered when he rendered the opinion, including whether Dr. Lucas' records were taken into account. For this reason, the Retirement Board was able to assess the reliability of each IME based on the facts considered by each physician in rendering his opinion. See 42-35-10(1) (relaxing slightly admissibility standards during administrative proceedings, providing board may consider evidence "if it is of a type commonly relied upon by reasonably prudent men and women in the conduct of their affairs"). Consequently, the Court finds no merit in Worley's contention that the alleged failure to consider Dr. Lucas' recent notes on Worley's condition rendered useless any opinions submitted by independent physicians that did not possess Dr. Lucas' notes.
Having concluded that the Retirement Board properly considered the reports of Doctors Morgan and Buonanno, and having determined that a physician's alleged failure to consider Dr. Lucas' report will not automatically void the utility of the resulting IME, the Court must now consider whether the Retirement Board's decision was supported by legally competent evidence. While uncontradicted evidence in the record demonstrates that the April 12, 2004 incident occurred while Worley was on-duty, and that he sustained some sort of injury to his back as a result of that incident, these facts alone do not automatically entitle the plaintiff to accidental disability benefits under § 36-10-14. Section § 36-14-10 clearly requires ERSRI to engage three physicians to conduct medical examinations in order to determine the existence, if any, of a causal relationship between the applicant's incapacity and an on-duty accident.
Accordingly, Kenneth J. Morrissey, M.D., P.C., examined Worley on July 26, 2005. Although Worley did not submit his written medical records to Dr. Morrissey for review, Worley *Page 11 
informed the doctor that he had treated with Dr. Cervone, a neurologist; had back surgery performed on him by Dr. Lucas in December 2003; and had been examined twice by Dr. Willets. After performing his own examination, Dr. Morrissey diagnosed Worley as having "[r]esiduals of a lumbosacral strain and dysesthesias down into his legs; status post a spine fusion at L5-S1. . . ." Dr. Morrissey reviewed Worley's typical job duties and determined that he was no longer able to perform those duties; instead, he would be capable of light duty, part-time employment. He concluded to a reasonable degree of medical certainty that Worley could no longer work as a correctional officer due to a "disability that is directly work-related is permanent in nature."
On July 27, 2005, Worley was examined by a second independent physician, W. Lloyd Barnard, Jr., M.D. Prior to his physical examination, Worley provided Dr. Barnard with the same treatment history that he had provided to Dr. Morrissey. Despite concluding to a reasonable degree of medical certainty that Worley indeed had injured his back, he remarked that the injury was not easy to categorize. Instead of completing the standard ERSRI independent medical examination form, Dr. Barnard stated that he would defer judgment about Worley's disability until Worley visited Dr. Morgan, a neurologist.
Worley met with Dr. Thomas M. Morgan, M.D., on July 28, 2005. Dr. Morgan concluded that Worley suffers from a spastic myelopathy stemming from degenerative disc disease. The doctor noted that Worley's history revealed a prior work-related fall in 2002, as well as some back pain. He remarked that Worley does not have an accidental disability from bending down and lifting a large tree branch while at work. Instead, he attributed Worley's condition to the normal aging process. Dr. Morgan stated that his opinion was based upon Worley's injury and diagnostic medical analysis, clinical experience, training as a board certified *Page 12 
neurologist and independent medical examiner, and his teaching and education in the areas of neurology, injury, and trauma.
After receiving the three aforementioned IME reports, the Subcommittee voted to table Worley's application at its September 2005 meeting. It requested Worley to submit all of Dr. Lucas' treatment records as well as medical records held by his employer. Upon reviewing the records provided by Dr. Lucas, the Subcommittee again tabled Worley's application at its November meeting. The Subcommittee requested that he visit William Buonanno, M.D., for an additional IME.
Dr. Buonanno conducted an orthopedic evaluation of Worley on December 20, 2005. He noted that Worley was involved in a major motor vehicle accident in 1997 or 1998, and eventually had a lumbar fusion performed in December 2003 to correct lingering back problems. Dr. Buonnano observed that Worley returned to work rather quickly post-surgery, and was symptomatic at that time. The doctor opined that Worley sustained a sprain to his lumbar spine as a result of the April 12, 2004 incident at the ACI, but that the sprain is now resolved. Doctor Buonanno concluded that Worley suffers from chronic pain in the region of his L5-S1 fusion. In his opinion, Worley's disability is a result of his back fusion, not as a result of lifting the branch.
In the instant matter, the Retirement Board had before it three IME reports, each of which indicated differing conclusions.[4]
Essentially, only the first physician engaged by the ERSRI certified that Worley's disability was the natural and proximate result of a work-related accident. The other physicians declined to make such a certification. Furthermore, the Subcommittee *Page 13 
made findings of fact and denied accidental disability benefits based on Worley's testimony before it and its evaluation of the same evidence. The Court notes that the Retirement Board was obliged to accord great deference to the Subcommittee's findings of fact on this matter.See Envt'l Scientific Corp. v. Durfee, 621 A.2d 200 (1993). Consequently, the Court finds that the Board's decision to deny Worley's application is supported by substantial evidence of record.[5]
 IV Conclusion
After a careful review of the entire record, the Court concludes that substantial evidence exists in the record to support the Retirement Board's affirmation of the Subcommittee's denial of accidental disability benefits to Fred Worley. Further, this Court finds that substantial rights of Mr. Worley have not been prejudiced.
Counsel shall prepare the appropriate judgment for entry.
[1] Worley previously had applied for and been awarded Workers' Compensation benefits for injuries resulting from the April 12, 2004 incident. Doctor Philo F. Willetts, Jr., M.D., examined Worley in conjunction with this application. In support of Worley's Workers' Compensation Claim, Dr. Willets opined that Worley aggravated his previous non-work-related back condition by lifting the branch on April 12, 2004. Dr. Willets attributed two-thirds of Worley's current back symptoms to the aggravation at work and one-third to his previously improving low back condition.
[2] The Court is aware that a narrow exception to the "raise-or-waive" rule exists. However, for a party to circumvent the rule, "the error complained of must be more than harmless error, the record must be sufficient to permit a determination of the issue, the issue must be of constitutional dimension, and counsel's failure to raise the issue must be attributed to a novel rule of law that counsel could not reasonably have known during trial." State v. Hallenbeck, 878 A.2d 992, 1018 (R.I. 2005). Nothing in the record suggests that this narrow exception applies to Worley's case.
[3] Worley asserts that Dr. Lucas' notes support a finding that the April 12, 2004 incident caused his alleged disability. The substance of Dr. Lucas' April 1, 2004 notes on Worley's condition is as follows:
 "He is coming along well, still some discomfort in his back at times when he is up for long periods of time or sitting, but generally feeling much better than he did prior to his surgery that was carried out December 12th. He is working. He rarely takes any medication for pain. He still has some difficulty sleeping. Exam today shows that he ambulates without difficulty, he has a range of motion of 60-70 degrees with flexion/extension, good lateral bend and rotation. Strength is 5/5, reflexes are 2 to 3+ but without clonus or pathological reflex. He has no sensory deficit. His x-rays show good position of instrumentation, bone graft is maturing. He is to continue with a daily program of walking, stretching, he is also swimming and he is given a prescription for Vicodin to take occasionally for pain and Restoril for sleep, follow up in six months."
[4] The Court observes that the Retirement Board, likely in an attempt to ensure that it was making the proper decision, even engaged the services of a fourth independent physician, which is not required by statute. Notably, this action bolsters the Court's finding that the Retirement Board's decision was not ill-conceived. The Court also observes that even if the final IME performed by Dr. Buonanno was intended to displace the earlier opinion of Dr. Morgan who was unable to determine the causality of Worley's disability, the Retirement Board still had before it substantial conflicting evidence which would warrant its denial of Worley's application.
[5] The Court observes that Worley cited to Rossi v. Employees'Retirement Sys. for the State of R.I., 895 A.2d 106 (R.I. 2006) as an alternative means to support his application for accidental disability benefits. Worley asserts that even if he was suffering from a degenerative disease, he would still be entitled to accidental disability benefits because Rossi requires the Retirement Board to consider whether the April 12, 2004 incident "ties" an employee's current disability to a pre-existing injury. Essentially, Worley argues that accidental disability benefits must be issued when an on-duty accident aggravates an earlier injury, regardless of whether the earlier injury was work-or non-work related.
Worley misconstrues our Supreme Court's holding in Rossi. In that case, the Court determined that an applicant is entitled to accidental disability benefits under § 36-14-10 if he or she aggravates an earlierwork-related injury upon resuming work after the initial injury. In circumstances where an applicant aggravated a previous work-related injury, the applicant would not be required to identify a new, specific incident to be entitled to accidental disability benefits. In this case, Worley may have aggravated an earlier injury, but that injury wasnon-work-related and therefore, does not fall under the purview of the Supreme Court's holding in Rossi. *Page 1